EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ARCADIO COLÓN, acusado y apelante.

Núm. 6027.—*Sometido:* Noviembre 18, 1936.   *Resuelto:* Diciembre 16, 1937.

414

*Felipe Colón Díaz*, abogado del apelante; *R. A. Gómez, Fiscal y Luis Janer, Fiscal Auxiliar*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

Eulogio Coto y Arcadio Colón fueron acusados de haber dado muerte a Juan Marrero, agrediéndole con un martillo. Al leérseles la acusación, cada uno de los acusados hizo la alegación de inocente, pidió juicio por separado y solicitó un pliego de particulares. Se señala como error el haberse denegado esta última súplica.

█ █ El artículo 71 del Código de Enjuiciamiento Criminal dispone que la acusación debe contener:

"2. Una exposición de los actos constitutivos del delito, en lenguaje conciso y corriente, y redactada de tal modo que cualquier persona de inteligencia común pueda entenderla."

La acusación en este caso cumplía con los requisitos exigidos por este artículo. *Pueblo* v. *Coto*, 48 D.P.R. 147. No obstante, el acusado Colón al tiempo de leérsele la acusación tenía derecho a un pliego de particulares, y el juez de distrito cometió error al declarar sin lugar su moción.

Si la evidencia en poder del fiscal no hubiese revelado cuál de los dos acusados fué el que dió el golpe fatal o en qué forma cada uno de ellos había participado en la comisión del delito, una manifestación a ese efecto hubiera suministrado suficiente motivo para denegar la súplica de Colón de que se le diera un pliego de particulares. Sin embargo, durante el juicio ocurrió que la teoría del caso sustentada por el fiscal era—y debió haberlo sido desde el principio—que Coto mató a Marrero con un martillo suministrádole para dicho fin por Colón y que Colón era un coautor (*accessory before the fact*). Bajo las circunstancias, Colón, a nuestro juicio, tenía claramente derecho a un pliego de particulares. Bajo tales circunstancias, no es respuesta a una moción para que se suministre un pliego de particulares el decir que la acusación cumple con los requisitos del artículo 71 del Código de Enjuiciamiento Criminal y que por tanto imputa un delito público. Parece igualmente fútil decir que la forma en que cada uno de los dos coacusados participó en la comisión del delito es cuestión que ya ellos conocían, a menos que el aforismo de que se presume que el acusado en una causa criminal es inocente hasta que se pruebe su culpabilidad fuera de una duda razonable, se haya convertido en letra muerta. De existir algo en sentido contrario en el caso de *Pueblo* v. *Coto,* supra, ello es hasta ese punto revocado por la presente opinión.

Empero, en el presente caso el letrado de Colón también representaba a Coto, y como resultado del juicio de Coto, estaba plenamente informado de la teoría del caso sustentada por el fiscal. El error cometido por el juez de distrito al declarar sin lugar la moción de Colón para que se le

suministrara un pliego de particulares no es, por consiguiente, suficiente motivo para una revocación.

■■ El segundo señalamiento es que la corte de distrito cometió error al declarar sin lugar una moción para que se eliminara la declaración de Ramona Ramírez, testigo de cargo.

Ramona Ramírez había vivido durante un corto período de tiempo con Colón. En respuesta a la pregunta de por qué había dejado a Colón, ella dijo que fué porque mientras él dormía hablaba muchísimos disparates y se tiraba por las ventanas y decía que una sombra no lo dejaba dormir. El acusado solicitó se eliminara esta declaración y pidió a la corte que instruyera al jurado que no la considerara. El fiscal de distrito dijo que esto era meramente un prólogo a lo que la testigo iba a decir. El juez creyó que sería mejor permitir que la testigo terminara su declaración a fin de determinar si era admisible o no. Los letrados de la defensa insistieron en que si Colón, mientras dormía, había hecho las manifestaciones atribuídasle, ellas eran inadmisibles, a pesar de todo lo demás que la testigo pudiera decir. Creemos que en esto los letrados tenían razón, pero la corte resolvió que la declaración de la testigo debía ser considerada en su totalidad a fin de determinar si era o no admisible. El acusado excepcionó esta resolución de la corte.

La testigo dijo que Colón le había manifestado en presencia de Pocholo que él, Colón, había dado el martillo para que Coto matara a Marrero.

El interrogatorio entonces continuó así:

"Fiscal: Cuente qué más le dijo a usted Arcadio Colón.

"Testigo: Pues, Arcadio Colón me dijo a mí en su misma casa, delante de Pocholo . . .

"Juez: ¿Quién?

"Delante de Pocholo. Que él había dado el martillo para que Eulogio Nogueras matara a Juan Marrero.

"Fiscal: ¿Quién es Eulogio Nogueras?

"Por lo presente será ese que está preso, porque yo no lo conocía.

"¿Pero él es Nogueras o Coto?

"Creo que es Nogueras o Coto.

· "¿Qué apodo tiene él en el pueblo?

"No le sé decir. Sé que le dicen Eulogio Coto.

"¿Usted no lo sabe?

"No lo sé. Yo lo único que le puedo decir es lo único que él me dijo.

"¿Y usted dice que este acusado de noche decía, qué?

"Decía muchos disparates y decía que había una sombra blanca al lado de él, y no podía dormir, y brincaba por una ventana.

"Fiscal: ¿Usted trataba de despertar al acusado?

"Testigo: Sí, señor.

"¿Qué le decía después de despierto él?

"Que veía una sombra blanca.

"¿Una sombra blanca, de qué?

"Un difunto que le decían . . . A mí se me olvida.

"¿Que él veía una sombra de un difunto?

"Sí.

"¿Le decía el nombre del difunto?—Si lo necesita tómese un poquito de calma.

"De Juan Marrero.

"Cuando le decía eso a usted, ¿estaba despierto o seguía dormido?

"Cuando me lo dijo ya estaba despierto; pero se dormía otra vez y volvía otra vez con el *desasío* en la cama.

"¿Eso se repetía?

"Se repetía, sí.

"¿Eso se repitió muchas noches?

"Se repitió, sí, señor. Y después de eso yo le cogí miedo y me tuve que ir de la casa.

"¿Cuando eso sucedía, el acusado estaba tranquilo o sosegado?

"Tranquilo.

"Fiscal: ¿Cuando él le decía eso a usted, ya él estaba tranquilo?

"Testigo: Sí.

"¿Usted lo ayudaba a él para que volviera a conciliar el sueño?

"Lo ayudaba.

"¿Y usted acabó por cogerle miedo?

"Tanto se repitió el hecho, que le cogí miedo.

"¿Y eso ocurría en Coamo?

"En Coamo."

El juez de distrito declaró sin lugar una moción para que se eliminara todo este testimonio y dijo que el jurado apreciaría la declaración de esta testigo al igual que lo haría

con la de cualquier otro testigo. Podría admitirse que el acusado no tenía derecho a que se eliminara toda la declaración. Sin embargo, el juez de distrito debió haber declarado con lugar la moción en tanto en cuanto la misma se refería a las manifestaciones hechas por Colón mientras dormía e instruído al jurado que hiciera caso omiso de tales manifestaciones. Si la corte hubiera declarado con lugar la primera moción del acusado y dicho al fiscal de distrito que debía limitar su interrogatorio a las manifestaciones hechas por Colón mientras estaba despierto, se habría evitado mucha de la confusión en torno a lo que se dijo mientras él estaba dormido y sobre lo que manifestó mientras estaba despierto. No habiéndolo hecho así, la corte debió haber instruído al jurado que debía considerar solamente las manifestaciones que ellos resolvieran habían sido hechas por Colón mientras estaba despierto. *People* v. *Robinson,* 19 Cal. 41, 42; *Martínez* v. *People,* 132 Pac. 64; Ann. Cas. 1914C, 561; 18 L.R.A. (N.S.) 788.

■ Surge una cuestión más seria del esfuerzo persistente de parte del fiscal de llevar al ánimo del jurado, por un pretexto u otro, ciertas manifestaciones hechas por el coacusado Coto, después de haberse efectuado el móvil de la supuesta conspiración y, en su consecuencia, después que la conspiración, de haberla, había terminado. Fuera de cualquier cuestión relativa al motivo que Coto tuviera para hacer las manifestaciones, ellas eran inadmisibles por ser manifestaciones de un conspirador, no importa qué pueda decirse sobre su admisibilidad por otros motivos. Véanse 16 Corpus Juris 644, sección 1283; id. 656, sección 1309; id. 659, sección 1314; *Pueblo* v. *Díaz,* 22 D.P.R. 191.

■ El fiscal puso a Coto a declarar y luego de identificarlo como uno de los acusados en el caso anterior de El Pueblo v. Coto y como testigo en el caso que se ventilaba, le preguntó si antes del juicio que se celebraba había declarado en Coamo. El acusado se opuso, y en el curso de la argumentación que surgió, el fiscal cité el caso de *El Pueblo*

v. *Sierra*, 42 D.P.R. 504. Luego dijo que de la declaración prestada por Coto en el caso de El Pueblo *v.* Coto tenía motivos para creer que éste sería un testigo hostil. El juez de distrito, luego de una prolongada discusión, manifestó que Coto hasta aquel momento no había demostrado hostilidad alguna, y por el momento declaró con lugar la objeción. El fiscal preguntó al testigo si recordaba haber declarado ante el Fiscal Rodríguez Serra. La corte declaró con lugar una objeción presentada. El fiscal preguntó al testigo si recordaba haber sido citado como testigo de cargo y haber declarado ante el Fiscal Rodríguez Serra en una investigación preliminar del caso contra Arcadio Colón y Eulogio Coto. El acusado se opuso y, luego de argumentos adicionales en pro y en contra, el juez sostuvo la objeción.

El fiscal preguntó a Coto si había sido acusado por la muerte de Juan Marrero. Él contestó: "A mí no. A mí se me acusó, pero yo no sé lo que pasó, yo no sé." La siguiente pregunta hecha fué si el testigo había prestado declaración jurada ante el Fiscal Rodríguez Serra mientras se investigaba la muerte de Juan Marrero. La corte sostuvo una objeción. El fiscal preguntó si el testigo había declarado en el juicio del caso de El Pueblo contra Coto. Éste contestó afirmativamente. El fiscal preguntó si su declaración había sido corta o larga. El testigo contestó que había sido regular. El fiscal preguntó si en el curso de su declaración el testigo había admitido o negado la declaración previamente prestada por él en Coamo ante el Fiscal Rodríguez Serra. La corte sostuvo una objeción. El fiscal preguntó si él había declarado en el caso de El Pueblo *v.* Coto en relación con la participación de Arcadio Colón con el testigo en la muerte de Juan Marrero. El juez, interinamente, sostuvo una objeción. El fiscal preguntó al testigo si conocía a Arcadio Colón. Los letrados de la defensa admitieron ese hecho.

En respuesta a otras preguntas el testigo dijo que: había conocido a Colón por espacio de seis meses; había conocido

a Colón durante unos cuatro meses con anterioridad a la muerte de Marrero; no recordaba la última vez que había visto a Colón antes de la muerte de Marrero; no recordaba cuánto tiempo transcurrió después de la muerte de Marrero antes de ver a Colón; vió a Colón después de la muerte de Marrero; no recordaba cuándo, pero lo había visto en Coamo, fué después de la muerte de Marrero; vió a Colón el mismo día y le había visto el día antes; había visto a Colón el día antes en la casa de Colón, en la calle St. Thomas, donde Colón tenía su ventorrillo; vió a Colón en su casa, no en el ventorrillo, como a las nueve o diez y media de la mañana; no había visto a Colón por la tarde ni por la noche; vió a Colón al siguiente día, cuando se halló muerto a Marrero; vió a Marrero el día antes de su muerte caminando por la calle St. Thomas; recordaba dónde Marrero había tenido su tienda; conocía la tienda bien; vió a Marrero en su tienda; no vió a Marrero en su tienda el día antes de su muerte, pero sí lo vió en la calle St. Thomas; no habló con Marrero en ningún momento durante dicho día ni durante la noche; había hablado con Colón varias veces porque él, Colón, tenía algunas reses y utilizaba al testigo en mandados; no vió a Colón el día siguiente al de la muerte de Marrero; estaba fuera de la ciudad aquel día; vió el cuerpo de Marrero aquel día, pero como era por la mañana, más tarde se fué para el campo a comprar unos mangos para venderlos en el pueblo, según era su costumbre; estuvo en el sitio en que se halló el cadáver hasta que éste fué levantado; vió cuando el cuerpo fué levantado; era tarde cuando regresó del campo y no vió a Colón durante la noche; vió a Colón en su ventorrillo unos dos días después de la muerte de Marrero; habló con Colón, pero no recordaba de qué hablaron; también habló con Colón en ocasiones posteriores; no recordaba cuándo había salido de Coamo; había continuado viviendo allí; había salido de Coamo unos dos meses después de la muerte de Marrero; se había ido a Cayey a un sitio que le llaman Rincón Sur de Cidra; después de su partida no volvió a ver a Colón; cuando

lo llevaron de regreso a Coamo vió a Colón nuevamente, en el cuartel de la policía; llevaron a Colón al cuartel después de llegar el testigo; no podía decir quién ayudó al detective Modesti a localizar a Colón, porque no estaba con el detective; no recordaba quién fué el que le señaló a Colón al detective porque él no estaba con Colón, sino en el cuartel; no recordaba haber acompañado al detective Modesti con el objeto de identificar a Colón, ni acompañó al detective; no había hallado a Colón en el cuartel porque trajeron a Colón después de haber llegado el testigo; no había prestado ninguna declaración jurada antes de la llegada de Colón; no recordaba haber prestado ninguna declaración jurada en el cuartel; había visto al Fiscal Rodríguez Serra en el cuartel; no había prestado declaración alguna ante el Fiscal Rodríguez Serra; no recordaba haber firmado ninguna declaración ante el Fiscal Rodríguez Serra, porque ni siquiera sabía poner el número uno en un papel; no había hecho ninguna declaración ante el fiscal. Éste entonces solicitó permiso para presentar al testigo una declaración anterior que se decía haber sido prestada ante el Fiscal Rodríguez Serra. Luego de una manifestación preliminar por parte del fiscal que dirigía la causa, el juez retiró al jurado y continuó la discusión. Los letrados del acusado preguntaron al fiscal si durante aquel día o durante el día anterior no había interrogado al testigo. El fiscal contestó que el día anterior había preguntado a Coto si iba a declarar lo mismo que declaró en el caso de El Pueblo *v.* Coto, y Coto había contestado que sostendría su declaración en parte y la negaría en parte; que deseaba tener la oportunidad de aclarar ciertos extremos de su declaración porque ella contenía mucha verdad y mucha mentira.

El juez resolvió que al fiscal se le permitiría presentar a Coto la declaración que se decía haber sido prestada ante el Fiscal Rodríguez Serra, no con el fin de probar el caso de El Pueblo, sino, conforme se dice en el caso de *El Pueblo* v. *Méndez,* 39 D.P.R. 660, "para contradecir con ella el actual

testimonio del testigo.'' Los jurados ocuparon sus asientos y el fiscal, presentándole una declaración jurada fechada el 15 de agosto de 1931, preguntó al testigo de quién era la firma que aparecía en el documento. El testigo contestó: "Yo no sé de quién es; no, yo no sé leer.'' El fiscal preguntó al testigo si aquella firma no era la suya y éste contestó negativamente. El fiscal solicitó permiso para identificar la firma mediante otro testigo. Antes de permitir que se hiciera esto, el juez, a instancias del letrado del acusado, permitió a éste que repreguntara al testigo sobre la declaración ya prestada. Durante esta repregunta el testigo dijo que: no había prestado ninguna declaración ante el fiscal; había prestado su declaración en Coamo ante el Jefe de la Policía, cuyo nombre no sabía, ante el secretario de la corte de Coamo, cuyo nombre tampoco sabía, y ante un detective llamado Firpo, que le había llevado a Coamo; había otras personas presentes que él no conocía; su declaración fué prestada en la Corte Municipal de Coamo, no en el cuartel; que lo llevaron allí de un sitio llamado Rincón Sur de Cidra; le llevaron al cuartel y comenzaron a interrogarle; él contestaba sus preguntas negativamente, pero había tanta gente en la calle oyendo, que le llevaron a la corte municipal, donde sólo había cinco personas; el Fiscal Rodríguez Serra no estaba entre esas cinco personas. La primera pregunta hecha por el jefe de la policía fué: "Dígame, Eulogio, ¿fué verdad que usted y Juan Pérez y Juan Marrero estuvieron en casa de Antonia Meléndez?'' El jefe, el secretario y el detective Firpo le tomaron la declaración; Rodríguez Serra no estuvo presente en ningún momento en la corte municipal; el secretario escribió la declaración a máquina.

La parte omitida de esta declaración describe lo sucedido durante la travesía de Rincón Sur de Cidra a Coamo, incluyendo trato cruel, amenazas e intimidación. De ser cierta la relación que a este respecto se hace, la declaración prestada por Coto en Coamo fué probablemente involuntaria.

El fiscal llamó como testigo a Juan Gierbolini, Secretario de la Corte Municipal de Coamo. Gierbolini identificó la declaración prestada por Coto el 15 de agosto de 1931, como la que él, Gierbolini, había escrito a máquina. Declaró que el jefe de la policía había hecho las preguntas; que la declaración fué suscrita y jurada ante el Fiscal Rodríguez Serra; que Rodríguez Serra no estuvo presente al tiempo en que se tomó la declaración; que Rodríguez Serra llegó durante la noche y la declaración le fué leída a Coto en presencia de Rodríguez Serra; que él—Gierbolini—leyó la declaración y Coto la confirmó; que él leyó la declaración dos veces porque el fiscal le instruyó que así lo hiciera; que después de la segunda lectura, el fiscal hizo que Coto la jurara; que Coto firmó el documento en su presencia y la firma que aparecía en el mismo era la de Coto. En el examen de repregunta Gierbolini declaró: Que la declaración fué prestada en presencia del jefe de la policía José González Bermúdez; que las otras personas presentes lo eran Pablo Murphy, Márshal de la Corte Municipal de Coamo, Leonardo Vargas, maestro de escuela, y el detective Modesti, conocido por Firpo; que para aquella época no había juez municipal en Coamo; que el Fiscal Rodríguez Serra no estuvo presente mientras se transcribió la declaración. En el examen redirecto el testigo explicó que el jefe de la policía llamó al fiscal y éste vino a Coamo; que el declarante firmó la declaración ante el testigo Gierbolini en el cuartel de la policía; que Coto en la época en que hizo su declaración no se quejó de habérsele sometido a violencia; que estaba tranquilo; que su declaración fué espontánea. En respuesta a preguntas adicionales héchasle por el letrado de la defensa, el testigo contestó que las preguntas fueron hechas a Coto por el jefe de la policía; que el testigo no recordaba si Firpo había hecho algunas preguntas; que el jefe de la policía hizo la mayoría de las preguntas; que llevaron a Coto del cuartel a la corte; que el jefe de la policía y Firpo fueron quienes lo llevaron.

Pedro Rodríguez Serra, Fiscal Auxiliar, declaró: que fué a Coamo a instancias del jefe de la policía de Coamo; que se dirigió al cuartel de la policía; que la declaración fué leída en alta voz dos veces a Coto; que él preguntó a Coto si ésa era la verdad de lo ocurrido y Coto contestó afirmativamente; que él le preguntó a Coto si alguien le había amenazado o ejercido coacción o violencia contra él, o le había hecho algún ofrecimiento y Coto contestó negativamente; que en presencia del testigo Coto suscribió y juró la declaración después de habérsele leído en alta voz en dos ocasiones y luego de habérsele pedido dijera si ella era exactamente lo que él había dicho y de haber contestado él afirmativamente; que la firma que aparecía en el documento era la de Coto; puesta ante el testigo; que la declaración fué firmada en presencia del testigo y a instancias suyas; que el testigo no vió señales o signos de violencia en la cara o en el cuerpo de Coto.

El fiscal presentó como prueba la declaración jurada para demostrar que Coto la había hecho. Luego de considerable discusión en pro y en contra en presencia del jurado, el juez lo retiró nuevamente y la cuestión en torno a si el documento era o no admisible con el fin indicado por el fiscal, de conformidad con la doctrina del caso de Pueblo v. Sierra, fué una vez más discutida extensamente. El juez, después de determinar que el fiscal intentaba continuar su examen del testigo Coto en relación con otra declaración prestada por éste anteriormente, se reservó su resolución sobre la cuestión ya sometídale y el jurado fué traído nuevamente a la sala de la corte.

Coto ocupó una vez más la silla testifical y al preguntarle el fiscal si había declarado en el caso de El Pueblo v. Coto, los letrados, luego de oponerse y de argumentar la cuestión, admitieron el hecho. Coto, en respuesta a una pregunta respecto a si recordaba haber declarado en el caso de El Pueblo v. Coto sobre la forma y manera en que él vió a Juan Marrero en la mañana en que éste fué encontrado en el hoyo, contestó

afirmativamente. Al preguntársele los nombres de las personas que había mencionado en su declaración en el caso de El Pueblo v. Coto como que acompañaban a Juan Marrero en la noche de su muerte, el testigo contestó: "Pues, yo declaré que con Arcadio Colón y con Juan Pérez . . . . . pero no es verdad eso." Preguntado si recordaba dónde habían encontrado a Juan Marrero aquella noche, contestó que no recordaba. Preguntado si recordaba dónde Juan Marrero, Arcadio Colón y Juan Pérez le habían hallado aquella noche, contestó que no recordaba. Preguntado si recordaba dónde él y los otros habían hallado a Juan Santiago, contestó que no recordaba. Preguntado si conocía a Juan Santiago, contestó afirmativamente. Preguntado si había oído a Juan Santiago declarar en el caso de El Pueblo v. Coto, declaró afirmativamente. Preguntado si había oído la declaración de Antonia Meléndez en ambos juicios contestó que la había oído declarar en el otro juicio, pero no en este caso. Al pedírsele que informara qué personas, si algunas, se reunieron en casa de Antonia Meléndez la noche que murió Juan Marrero, él contestó: "Eso yo no lo puedo decir porque yo no sé qué personas se reunieron esa noche." Preguntado si recordaba si Juan Marrero, Arcadio Colón, Juan Pérez y él habían visitado la casa de Antonia Meléndez aquella noche, contestó: "En ningún momento." Preguntado si recordaba si en la mañana del día siguiente, bien temprano, cuando Juan Marrero amaneció muerto en el hoyo de Coamo, ellos vieron a Antonia Meléndez, él contestó: "No recuerdo." Preguntado si recordaba cuántas personas había dicho él en el juicio contra Coto que andaban con Juan Marrero aquella noche, contestó: "Recuerdo haber dicho." Al preguntársele cuántas personas estaban con Marrero y quiénes eran esas personas de acuerdo con su declaración anterior, contestó: "Dije que andaba yo, Arcadio Colón y Juan Pérez, pero eso no es verdad tampoco."

Al día siguiente el fiscal llamó a Manuel Rivera, quien declaró que Rodríguez Serra había examinado a Coto en

detalle sobre el contenido de la declaración prestada por Coto en Coamo y que Coto había suscrito la declaración en presencia del testigo y de Rodríguez Serra. Cuando Coto ocupó nuevamente la silla testifical, el fiscal invocó el artículo 153 de la Ley de Evidencia y obtuvo, con la objeción de la defensa, permiso para hacer preguntas sugestivas en bien de la justicia. Preguntado qué sabía sobre la muerte de Marrero, el testigo contestó: que como a las seis de la tarde, él y otros se estaban dando algunos palos frente al ventorrillo de Marrero; que se separaron como de seis y media a siete; que como a las nueve él visitó la casa de su cuñado y al llegar a la casa de Lino Zambrana, estaban allí Juan Marrero, Juan Pérez y Pedro Pérez Zambrana; que él se detuvo a la entrada de la puerta y Marrero le dijo: "Ah, Yoyo, tú estás aquí, pero te has quedado sin darte el palo", y el testigo contestó que eso no le hacía; que Marrero habló con los otros durante un ratito y se viró para donde él y le dijo: "Pero toma esos cinco centavos para que te des el palo", y él cogió los cinco centavos y permaneció de pie un ratito más parado donde estaba; que entonces se fué para su casa y un amigo suyo, Marcelo, llegó y le propuso que dieran una vuelta por el pueblito y entonces le dijo que sí; que al pasar frente a la casa de Juan Santiago estaban allí Pedro Pérez y Marrero y al llegar al cafetín de un testigo llamado Roche, Marcelo dijo: "Vamos allá por el pueblo un rato," y el testigo le contestó que no, que se iba a dormir, y Marcelo dijo: "Vámonos a dormir"; que la casa de Marcelo estaba más allá que la de él y al llegar a su casa se acostó y Marcelo siguió; que no sabía si Marcelo se fué para su casa; que él se acostó y a la mañana siguiente Pino Sosa, quien vivía al otro lado de la calle, vino y le dijo que Juan Marrero había sido hallado muerto y el cuñado del testigo dijo que se dejara de mentiras, que no estuviera anunciándole la muerte a nadie; que fueron al sitio donde estaba el difunto y cuando llegaron allí había muchísima gente; que permaneció allí hasta que levantaron el cadáver y entonces se fué para el campo a coger

unos mangos para venderlos, según tenía por costumbre; que la ·investigación prosiguió y cogieron a bastante gente para investigar y a él nadie lo mentó para nada ni fué llevado al cuartel; que permaneció en Coamo durante unos dos meses y entonces le dijo a su hermana que se iba para Mayagüez porque en Coamo no había .vida para nadie y ella le dijo que se fuera a su casa a trabajar, y él se fué para la casa de ella; que unos seis u ocho meses más tarde un amigo manifestó al testigo que dos hombres estaban investigando dónde él vivía y que el testigo continuó viviendo en el sitio conocido con el nombre de Rincón Sur de Cidra; que como un mes más tarde se presentó Firpo con un hombre que se le había dicho al testigo era hermano del muerto. A partir de este punto el testigo continuó su relación· substancialmente en la forma expuesta en la repregunta por los letrados del acusado, supra, con algunos detalles adicionales, como por ejemplo: que en la travesía de Rincón Sur ,de Cidra a Coamo, Firpo le dijo al testigo que lo iba a matar a golpes si al llegar al cuartel de la policía de Coamo no decía que él, Arcadio Colón y Juan Pérez habían matado a Marrero; que lo iba a poner picado del pecho; que tanto fué el miedo que cogió el testigo que todas las preguntas que le hacía el jefe de la policía de Coamo se las contestaba afirmativamente, pero que eso no era verdad; que el testigo no sabía nada absolutamente sobre el crimen de que se acusaba a él y a otras personas; que él era completamente inocente.

Preguntado por qué luego de haber prestado su declaración bajo la influencia de temor ante el jefe de la policía de Coamo, al ser preguntado por el Fiscal Rodríguez Serra, sin que estuviera presente el jefe de la policía, ni ningún policía, y sin temor de clase alguna, él había contestado al fiscal Rodríguez Serra afirmativamente, el testigo manifestó que no sabía que Rodríguez Serra era .fiscal; que Rodríguez Serra le dijo más tarde que él era el fiscal. Preguntado si había tenido miedo cuando prestó su declaración ante Rodríguez Serra, el testigo contestó que no tenía miedo alguno. Pre-

guntado qué había declarado a Rodríguez Serra en relación con lo que él y Arcadio Colón habían hecho la noche en que murió Juan Marrero, contestó que él al fiscal no le había declarado nada. Preguntado qué habían hecho Arcadio Colón, Juan Pérez y él después de oscurecer, la noche que murió Marrero, él contestó: "Yo no hice nada; ahora, yo no sé de ellos lo que hicieron." Preguntado dónde había visto por última vez a Juan Pérez y a Arcadio Colón aquella noche, contestó: "No los ví esa noche." Preguntado respecto a qué hora vió a Arcadio Colón por última vez aquel día, contestó que no había visto a Arcadio Colón después de las 6:30 de la tarde. En respuesta a otras preguntas el testigo dijo que el sitio donde había visto a Arcadio Colón por última vez fué frente al ventorrillo que Arcadio Colón le había comprado a Marrero; que sabía que Arcadio Colón había comprado el ventorrillo porque la gente lo decía; que no había oído decir a Marrero tal cosa; que él y los demás no habían visitado la casa de Antonia Meléndez entre nueve y diez de la noche ni en ningún otro momento durante aquella noche. Preguntado si le había dicho al fiscal que dirigía el proceso que él y otros habían estado en la casa de Antonia Meléndez aquella noche entre nueve y diez y que todos ellos a excepción de Juan Marrero habían tomado licor, el testigo contestó: "Eso es según la declaración de Coamo; pero ésa la dí yo, pero no es verdad." Preguntado si recordaba haber declarado "aquí en la corte de distrito" en el caso contra él por el asesinato de Juan Marrero, que él, Arcadio Colón, Juan Pérez y Juan Marrero habían visitado la casa de Antonia Meléndez entre nueve y diez de la noche y que todos ellos habían tomado ron menos Juan Marrero, contestó: "Aquí yo no recuerdo haber declarado eso." Preguntado si no había declarado como testigo en la corte de distrito en el caso de El Pueblo v. Coto que él había pegado con un martillo a Juan Marrero por temor a Arcadio Colón, el testigo contestó: "Aquí, no, en Coamo sí, pero no es la verdad." Preguntado si había declarado que Arcadio Colón le había pro-

puesto matar a Juan Marrero con un martillo, él contestó:
"Aquí la contesté que sí, que la había dado en Coamo, pero
no era verdad."

El examen, omitiendo las objeciones y los argumentos,
prosiguió entonces así:

"Fiscal: ¿Y recuerda usted, testigo, lo que usted declaró aquí en
esta corte, en el juicio de El Pueblo de Puerto Rico contra Eulogio
Coto por la muerte de Juan Marrero, sobre la razón que usted tuvo
para negarse al principio a pegarle con el martillo a Juan Marrero
y por qué usted lo hizo después?

. . . . . . . . . . . . . . . . . . . . . . . . .

"Testigo. No recuerdo.

"Fiscal: ¿Y recuerda usted, testigo, lo que usted declaró aquí en
el juicio de Eulogio Coto por la muerte de Juan Marrero que usted
al principio no quería pegarle a Juan Marrero porque era su amigo?

"Testigo: Según la declaración de Coamo, sí, dije que sí, dije que
sí, pero que no era verdad.

"¿Y no recuerda usted, testigo, haber hecho en esta misma corte
de distrito, en el juicio de Eulogio Coto por la muerte de Juan Ma-
rrero, una demostración con este fiscal que le habla, cuando usted
cogió una regla y le señaló al fiscal, puesto de espaldas para usted,
dónde usted le había dado el martillazo a Juan Marrero?

. . . . . . . . . . . . . . . . . . . . . . . . .

"Testigo: Yo recuerdo que le contesté a él que no tenía que hacer
ninguna *posición* porque no había matado yo a nadie.

. . . . . . . . . . . . . . . . . . . . . . . . .

"Fiscal: ¿Y recuerda usted, testigo, haber declarado, haber con-
testado a una pregunta de este fiscal en el caso de Eulogio Coto por
la muerte de Juan Marrero, que después de muerto Juan Marrero,
Arcadio Colón y Juan Pérez lo metieron en el río, lo llevaron al río
y lo metieron en el agua?

"Testigo: Yo no lo declaré. Usted me lo preguntó, y yo le dije
que según la declaración de Coamo, que sí, pero que no era verdad.

"Fiscal: ¿Y quiénes declaró usted que habían metido en el río, en
el agua, a Juan Marrero?

. . . . . . . . . . . . . . . . . . . . . . . . .

"Testigo: Usted me hizo una pregunta, y yo le contesté que según
la declaración de Coamo, sí, pero que no es la verdad la declaración
de Coamo ésa.

"Fiscal: Pero cuando yo le pregunté en la declaración ésa, a quién se refirió usted y quién dijo usted que habían sido las personas que habían metido a Juan Marrero en el río?

"Testigo: Eso dije, dije eso en la declaración ésa de Coamo.

"Fiscal: Pero a qué personas se refirió usted, quiénes eran.

"Testigo: Arcadio Colón y Juan Pérez.

"Fiscal: ¿Y recuerda el testigo haber declarado a una pregunta en aquel juicio de Eulogio Coto por la muerte de Juan Marrero, que Arcadio Colón y Juan Pérez volvieron después con ropa limpia para vestir a Juan Marrero?

"Testigo: Eso es la declaración ésa de Coamo, que esa declaración no es verdad.

"Fiscal: Pero usted declaró aquí también en la corte en el juicio de Eulogio Coto por la muerte de Juan Marrero, eso?

"Testigo: Yo no le declaré eso. Usted me hizo la pregunta y yo le contesté eso, que en la declaración de Coamo, que sí, pero que no era verdad.

"Fiscal: ¿Recuerda usted haber declarado en esta corte en el juicio de Eulogio Coto por la muerte de Juan Marrero, que todo eso había ocurrido entre una y las dos de la madrugada de aquella noche del día 30 de junio de mil novecientos treinta?

"Testigo: Recuerdo que usted me hizo la pregunta, y le contesté que según la declaración de Coamo, sí; pero no era verdad.

"Fiscal: ¿Y si no era verdad, por qué usted fijó esa hora en su declaración?

"Testigo: Porque el mismo jefe me decía la hora, el jefe de la policía de Coamo.

"Fiscal: ¿Y usted contestaba por lo que le decía el jefe?

"Testigo: Por lo que me decía el jefe.

"Fiscal: ¿Y cuando el Fiscal Rodríguez Serra lo vió a usted, después, y ya no tenía nada usted que ver con el jefe, y le preguntó la hora en que eso había ocurrido, por qué usted le dijo esa misma hora?

"Testigo: Pero al señor fiscal no le menté hora ninguna.

"Fiscal: No le mentó hora. ¿Y el Fiscal Rodríguez Serra no le preguntó a usted personalmente sobre toda la declaración que usted había dado?

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Testigo: No me preguntó nada: Me la leyó.

"Fiscal: ¿Se la leyó?

"Testigo: Sí.

"Fiscal: ¿Entonces usted recuerda que el Fiscal Rodríguez Serra le leyó la declaración ésa?

"Testigo: Seguramente que lo recuerdo.

"Fiscal: ¿Y recuerda usted que usted firmó la declaración?

"Testigo: Eso, no lo recuerdo.

"Fiscal: ¿Y recuerda usted haber dicho a este fiscal en el caso de Eulogio Coto por la muerte de Juan Marrero, que cuando el golpe cayó sobre la cabeza de Juan Marrero, Juan Marrero estaba de espaldas?

"Testigo: Según la declaración de Coamo, usted me hizo la pregunta, le dije que sí, pero no era verdad.

"Fiscal: Nada más.

"Juez: La defensa puede repreguntar al testigo.

"Fiscal: Quiero hacer constar que todo el testimonio que he leído al testigo, le ha sido leído y las preguntas han sido hechas sobre ese testimonio anterior, con el propósito de contradecir a este testigo por su actitud en el testimonio directo y de acuerdo con el permiso que le concedió la corte al fiscal según el artículo 153 de la Ley de Evidencia y el 243 del Enjuiciamiento Criminal, y la jurisprudencia del caso de *El Pueblo* v. *Méndez* en el tomo 39 página 660.

"Juez: Se hace constar así. La defensa puede empezar su interrogatorio de repregunta."

La manifestación hecha por el fiscal al terminar el examen directo debe ser interpretada en el sentido de que se refiere a aquella parte del examen que inmediatamente precedió tal manifestación. El examen de este testigo ocupó el tiempo y la atención de la corte y el jurado durante poco menos de dos días. Comprende unas doscientas páginas de la transcripción taquigráfica. Desde principios hasta muy cerca de la terminación del examen directo envolvía un esfuerzo más o menos continuo de parte del fiscal de llevar ante el jurado las declaraciones anteriores hechas por el testigo, no con el fin de contradecir su declaración durante el juicio del presente caso, sino como la declaración de un conspirador hecha después de haber terminado la conspiración. Fué durante el segundo día del examen, después que el fiscal había solicitado y obtenido permiso de la corte para hacer preguntas capciosas y poco antes de terminarse el examen directo, que ocurrió el incidente que se relata a continuación:

"Fiscal: ¿Y en esta misma corte de distrito a este fiscal que le está preguntando ahora, qué le declaró usted en el juicio de El Pueblo de Puerto Rico contra usted que usted había hecho por mandato de Arcadio Colón?

"Defensa: Nos oponemos, señor Juez. Nos oponemos, porque no estamos investigando en el día de hoy el caso contra Eulogio Coto; estamos investigando el caso de Arcadio Colón, y lo que manifestó Eulogio Coto en aquel momento nada tiene que ver con el caso que estamos investigando hoy, siendo éste un testigo de El Pueblo de Puerto Rico que debe contestar única y exclusivamente lo que sabe, no lo que contestó ese día, y porque el fiscal no está haciendo esas preguntas para contradecir a este testigo de acuerdo con los artículos 243 y 243 (*sic*) del Código de Enjuiciamiento Criminal de Puerto Rico.

"Fiscal: Estoy preguntando de acuerdo con el Art. 153 de la Ley de Evidencia.

"Juez: Lo que dice la defensa es que el fiscal no está preguntando al testigo para contradecirlo. ¿Es ésta, o no es ésta la cuestión?

"Fiscal: No le está preguntando para contradecirlo.

El Fiscal está preguntando de acuerdo con el Art. 153 de la Ley de Evidencia, preguntándole lo que él sabe, lo que es de su propio conocimiento, y lo que él ha declarado como coautor de este mismo delito en juicio separado, de El Pueblo de Puerto Rico contra Eulogio Coto, siendo Eulogio Coto la persona que aparece en la acusación formulada contra Eulogio Coto y Arcadio Colón, la misma persona que habla hoy como testigo, y Arcadio Colón, mencionado en la acusación, el acusado que se sienta hoy en el banquillo.

"Defensa: El Art. 153 de la Ley de Evidencia, y como lo ha resuelto S.Sa. a favor del fiscal, es que puede hacer preguntas sugestivas. Una cosa es la pregunta sugestiva, y otra cosa es si la pregunta es permisible en ley aunque sea sugestiva. A las preguntas sugestivas yo siempre me opondré aunque la corte las admita de acuerdo con el *ruling* de la corte, para tomar excepción. Otra cosa es que aunque sea sugestiva, si es permisible.

"Fiscal: Es permisible de acuerdo con la jurisprudencia y de acuerdo con la autoridad citada por el fiscal, en cuanto a que toda declaración dada por un cómplice o coacusado en relación con los hechos comunes de él y de otro coautor, especialmente aquél que fué procesado conjuntamente con él y juzgado separadamente de él, es admisible en evidencia.

"Juez: Estamos cayendo de nuevo en la misma cuestión de ayer, que fué resuelta ayer, o que todavía no se ha resuelto,—que se resolvió parcialmente.

"El Art. 153 de la Ley de Evidencia es el que se refiere a preguntas sugestivas; pero no es al que la corte se quiere referir. Es al Art. 156 de la Ley de Evidencia, y al Art. 243 del Código de Enjuiciamiento Criminal. Ése es el más aplicable.

"Fiscal: Pero eso es para contradecir. Yo no estoy contradiciendo.

"Juez: Y dice: 'A la parte que presenta un testigo, no le es permitido impugnar su veracidad probando que es persona de mala reputación; pero podrá contradecirlo, aduciendo prueba en contrario, y demostrando que en ocasiones anteriores ha hecho manifestaciones que no concuerdan con su actual declaración.' (Art. 243 del Código de Enjuiciamiento Criminal.)

"Eso es todo lo que puede hacerse de acuerdo con dicho artículo, explicado y aclarado por la jurisprudencia de la Corte Suprema en el caso de *El Pueblo de Puerto Rico* v. *Méndez*, 39 D.P.R., página 660 y 661. De modo que eso es lo que puede hacerse. Si no es para ese fin, entonces la corte sostiene la objeción de la defensa.

"Fiscal: Con la venia de la corte . . .

"Vamos a aclarar la diferencia que entiende el fiscal que existe entre los dos puntos. El fiscal está haciendo al testigo preguntas sugestivas con la previa autorización de la corte y de acuerdo con el Art. 153 de la Ley de Evidencia. La pregunta que se le acaba de hacer al testigo es con el propósito no de contradecirle y demostrar lo que él haya manifestado anteriormente contrario a lo que ha manifestado ahora, sino sencillamente para determinar lo que él sabe porque lo haya dicho en esta misma corte en el juicio de El Pueblo de Puerto Rico contra él mismo como coacusado con Arcadio Colón y como coautor del delito de asesinato por la muerte de Juan Marrero. Y la cuestión no es, según la entiende el fiscal, aquélla, sino la de si se permite, si es permisible en derecho preguntar al coacusado que ya recibió un juicio por separado haciéndole preguntas sugestivas, entendiendo el Ministerio Fiscal en este caso que es un derecho de El Pueblo, en juicio separado contra Arcadio Colón, a preguntarle a Eulogio Coto como coautor ya convicto todo lo que él haya declarado como coautor de ese mismo delito por que se persigue a Arcadio Colón en esta misma corte y que le es de conocimiento personal.

"Juez: Esta cuestión se discutió ayer muchísimo . . .

434

"Defensa: ¿Me permite la corte? . . . Si es una cosa resuelta por la corte. Yo creí que el fiscal estaba fundamentando su excepción. Él lo que ha solicitado es una reconsideración para que la corte vuelva sobre sí. Tenía la impresión de que el fiscal estaba fundamentando una excepción a la resolución de S. Sa. Lo que ha pedido es una reconsideración a la resolución de S. Sa.

"Juez: Estamos poniendo una discusión sobre otra innecesariamente.

"Defensa: Está en el récord taquigráfico lo que él dijo. El ha debido pedir la reconsideración en forma, pero empezó a discutir.

"Juez: No. La corte no va a reconsiderar ni nada. La corte lo que está diciendo es que se está repitiendo lo que se dijo ayer cuarenta o cincuenta veces ahora; el testigo está declarando desde ayer; y, naturalmente, se repite esta misma cuestión. Déme acá el volumen 39, para repetir una vez más las palabras de la Corte Suprema al pie de la letra, es lo único,—página 660.

"Este es un testigo del fiscal. ¿No es eso? ¿Es así?

"Fiscal: Sí, señor.

"Juez: ¿Es correcto?

"Fiscal: Sí, señor.

Juez: De acuerdo con el Art. 243 del Código de Enjuiciamiento Criminal: 'A la parte que presenta un testigo no le es permitido impugnar su veracidad probando que es persona de mala reputación; pero podrá contradecirlo, aduciendo prueba en contrario, y demostrando que en ocasiones anteriores, ha hecho manifestaciones que no concuerdan con su actual declaración.'

"Y la jurisprudencia del caso de El Pueblo v. Méndez dice, refiriéndose a esta clase de evidencia y a estas situaciones (que se puede encontrar el fiscal con un testigo que trae a declarar y que espera que declare en cierto sentido y después no declara en ese sentido estando entonces el testigo dentro de las prescripciones del artículo que ya hemos citado del Código de Enjuiciamiento Criminal): 'Que el fiscal en ese caso tenía derecho a que se le diera una oportunidad para presentar esa evidencia, no para probar con ella su caso, sino para contradecir con ella el actual testimonio del testigo.'

"Son dos cosas distintas completamente. Por eso la corte le preguntó al fiscal si esa pregunta iba encaminada a contradecir el testimonio del testigo, o no. Y quiere decir que si hubiese sido una pregunta encaminada a contradecir el testimonio del testigo, aduciendo prueba en contrario, la corte podría admitirla; pero como el fiscal dijo que esa pregunta no era para eso, por eso la corte sostuvo la objeción."

Esta discusión, al igual que mucha de la argumentación en torno a tentativas similares del fiscal durante el examen de este testigo, ocurría en presencia del jurado. La tendencia natural, de tanta discusión, en torno a lo que Coto había dicho como testigo mientras estuvo acusado por el asesinato de Juan Marrero o en su declaración jurada durante la investigación preliminar en Coamo, fué desviar la atención del jurado de la cuestión principal y crear la impresión de que la cuestión relativa a si Coto había dicho o no la verdad en ocasiones previas fué una cuestión fundamental en el caso.

Al terminarse la declaración de Coto, el juez mencionó el hecho de que la declaración jurada de Coto ofrecida por el fiscal el día anterior no había sido admitida. El fiscal manifestó que no insistiría en que se admitiera el documento. El juez preguntó si el fiscal quería decir con esto que lo retiraba y éste contestó afirmativamente. Nunca hubo cuestión alguna respecto a si Coto había hecho o no la declaración. Al momento de ofrecerse el documento como prueba, la cuestión era si Coto lo había suscrito en presencia del fiscal. La única cuestión fué sobre la legitimidad de la firma o sobre si Coto había firmado el documento en presencia del fiscal. El contenido del documento no tenía importancia a este respecto. El juramento hubiera agregado muy poco o nada a la evidencia que ya estaba ante la corte.

Ni la declaración jurada prestada por Coto en respuesta a las preguntas héchasle por el jefe de la policía en presencia de Firpo y de otros, ni la transcripción taquigráfica de la declaración de Coto en su propio juicio están ante este tribunal. Es una inferencia lógica que la declaración, no importa la que fuere, había sido obtenida por el fiscal durante la repregunta de un testigo hostil.

El fiscal, conforme hemos demostrado, poco después de poner a Coto a declarar en el presente caso, manifestó francamente que de la declaración prestada por Coto en el caso de El Pueblo v. Coto, él tenía motivos para creer que Coto sería un testigo hostil. El fiscal también había sido infor-

mado por el propio Coto que su declaración en el caso de Colón no sería tan favorable al Pueblo como lo había sido en el juicio de su propio caso. No obstante, si el fiscal creyó honradamente que Coto había dicho la verdad en la declaración jurada prestada en respuesta a las preguntas héchasle por el jefe de la policía en presencia de Firpo y de otras personas, no había razón alguna para que no pusiera a Coto a declarar con el fin de interrogarle, según hubiera hecho con cualquier otro testigo de cargo en un esfuerzo consciente de obtener de él una repetición de su declaración anterior, en todo o en parte.

El artículo 243 del Código de Enjuiciamiento Criminal y el artículo 156 de la Ley de Evidencia (que es en la actualidad el artículo 518 del Código de Enjuiciamiento Civil, edición 1933) son disposiciones saludables, que tienen por miras ayudar a la corte a conocer la verdad. Estos artículos no deben ser desmenuzados haciendo que la "sorpresa" sea una condición previa a la impugnación de los testigos propios. Podría aun argüirse con excelentes autoridades que toda vez que el mismo Coto estaba presente y sujeto a ser repreguntado respecto a sus propias declaraciones anteriores, tales declaraciones no eran contrarias a las reglas contra prueba de referencia. Véase 2 Wigmore (segunda edición) 459–460, sección 1018, párrafo (b). Sin embargo, si hemos de adherirnos a la regla establecida en el caso de *El Pueblo* v. *Rojas,* 16 D.P.R. 251, y en una serie de casos posteriores, la sentencia de la corte de distrito no puede ser sostenida. Véanse: *El Pueblo* v. *Colón,* 25 D.P.R. 629; *El Pueblo* v. *Ramírez de Arellano,* 25 D.P.R. 263; *El Pueblo* v. *Rodríguez Hernández,* 36 D.P.R. 427; *El Pueblo* v. *Plata,* 36 D.P.R. 590; *El Pueblo* v. *Lafontaine,* 43 D.P.R. 23; *El Pueblo* v. *Busigó,* 51 D.P.R. 955, 956.

El fiscal no puso a Coto a ocupar la silla testifical con el objeto de demostrar con su declaración directa que Colón había instigado la comisión del asesinato. El fiscal tuvo el objeto fijo de ofrecer las declaraciones anteriores de Coto

como evidencia independiente y positiva. Fué bajo la compulsión de resoluciones adversas que él finalmente hizo unas cuantas preguntas con el objeto de sentar la base para la impugnación de su propio testigo. En el ínterin, probablemente había hecho una impresión más fuerte en el jurado de lo que lo hubiera hecho si las declaraciones anteriores de Coto hubiesen sido admitidas desde el principio. No es necesario poner en tela de juicio la admisibilidad de estas declaraciones con el fin de contradecir el testimonio directo de Coto en el presente caso.

El juez, luego de instruir al jurado, agregó a instancias del letrado del acusado, una instrucción especial al efecto de que el jurado debía tomar en consideración tan sólo la prueba "presentada" durante los cuatro días que duró el juicio y que no debía considerar para ningún fin evidencia que se había presentado en otro sitio o lo dicho por cualquier testigo en cualquiera otra parte. Subsiste el hecho de que el jurado pudo haber sido influído indebidamente en la consideración de su veredicto por la prolongada discusión del fiscal en torno a la supuesta introducción de las declaraciones anteriores de Coto como testimonio independiente y positivo, no obstante el hecho de que el juez de distrito dió la instrucción especial solicitada por el letrado del acusado y no obstante el hecho adicional de que las admisiones de Coto durante el juicio del presente caso fueron propiamente admitidas con el fin de contradecirlo.

La prueba de cargo, fuera de la larga controversia sobre las declaraciones y admisiones anteriores de Coto, no es tan concluyente que haga improbable que el jurado fuera indebidamente influído por esa controversia. Esa prueba—a excepción del testimonio de Ramona Ramírez sobre la manifestación que ella dice Colón hizo en presencia de Pocholo—era enteramente circunstancial. Se hizo la estipulación de que si Pocholo fuera llamado a declarar como testigo de descargo, él declararía que Colón no había hecho tal manifestación en presencia suya. Antonia Meléndez declaró que en la noche

en que murió Marrero, Colón, Marrero, Coto y Juan Pérez estaban en la casa de ella entre ocho y nueve de la noche o poco antes de las nueve. Que como a las seis de la mañana del siguiente día, Colón, Coto y Pérez nuevamente pasaron por su casa sin Marrero y en respuesta a la pregunta de dónde habían dejado a Marrero, contestaron que lo habían dejado durmiendo. El abogado de Colón declaró que Antonia Meléndez le había dicho que la declaración prestada por ella ante el fiscal era falsa. Hubo prueba tendiente a demostrar que Colón, Coto, Pérez, Marrero y otro u otros estaban juntos en el ventorrillo de Colón entre siete y media y ocho de la noche; pero Colón estableció una fuerte coartada que comprendía el tiempo que medió entre las cinco de la tarde y las nueve o más de aquella noche. El cuñado de Coto declaró que Colón, aunque estaba bajo la influencia del licor, le dijo a Coto que tenía que irse a Cayey "porque si tú me descubres este caso, lo arreglamos los dos después." Quizá haya otro testimonio digno de mención. No hemos leído una vez más la transcripción taquigráfica con el objeto de refrescar nuestra memoria sobre este punto. No hubo prueba satisfactoria de motivo. Podría admitirse que si el jurado creyó los testimonios de Ramona Ramírez, Antonia Meléndez y el del cuñado de Coto, sus declaraciones podrían considerarse como suficientes para sostener el veredicto. Dejan de convencernos de que el jurado hubiese rendido el mismo veredicto si no se hubiera dado tanto énfasis a las declaraciones y admisiones anteriores de Coto.

No nos es posible eludir la conclusión de que el jurado pudo haber basado su veredicto en parte en la declaración jurada de Coto prestada ante el jefe de la policía y en presencia de Firpo o en la declaración jurada de Coto prestada en su propio juicio, o en ambas.

*La sentencia apelada debe ser revocada y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Presidente Señor del Toro y Asociado Señor Córdova Dávila no intervinieron.