EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* RAÚL SANTIAGO LUGO, acusado y peticionario.

*Número:* CE-93-8                    *Resuelto:* 15 de noviembre de 1993

*Reina Colón de Rodríguez, Procuradora General Interina, Jaime L. Vázquez Bernier* y *Héctor Clemente Delgado, Procuradores Generales Auxiliares*, abogados de El Pueblo; *Federico Torres Jiménez*, abogado del peticionario.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Convicto que fuera, en juicio celebrado por jurado ante el Tribunal Superior de Puerto Rico, Sala de Bayamón, por una infracción al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 240, Raúl Santiago Lugo apeló de la sentencia de quince (15) años de reclusión que dicho foro judicial le impusiera, imputándole al mismo la supuesta comisión de tres (3) errores, a saber:

1.  Erró el jurado en su apreciación de la prueba, toda vez que en un balance justo y razonable de ésta no establece la culpabilidad del acusado más allá de toda duda razonable y fundada.

2.  Erró el Tribunal en su determinación en torno a una solicitud de supresión de evidencia presentada durante el juicio basada en que la ilegalidad de la obtención de la evidencia surgía de la prueba del fiscal, habida cuenta de que el Honorable Juez que presidió el juicio no emitió el dictamen de rigor respecto a dicha solicitud, limitándose a señalar lo siguiente: "El planteamiento que hace la defensa mas bien va a la credibilidad de los testigos y eso es por los señores del jurado que la adjudicarán."

3.  Erró el Tribunal al no reprender a la fiscal ni instruir apropiadamente al jurado, tras contrainterrogar la misma al acusado con miras a atacar su credibilidad, por no haber éste declarado en la etapa de determinación de causa probable para el arresto. *Exhibit*, págs. 1–2.

Mediante Sentencia de 8 de diciembre de 1992, la Sección Norte del extinto Tribunal de Apelaciones de Puerto Rico *confirmó* la convicción decretada.([1]) Inconforme, Raúl Santiago Lugo radicó, en tiempo, recurso de *certiorari* ante este Tribunal imputándole a dicho foro judicial haber errado al así actuar. El 5 de febrero de 1993, le concedimos término a la Oficina del Procurador General de Puerto Rico

...para mostrar causa por la cual este Tribunal no debe expedir el auto solicitado y dictar Sentencia revocatoria de la emitida por el Tribunal de Apelaciones de Puerto Rico, Sección Norte.

---

([1]) Panel integrado por el Juez Negrón Soto, como su presidente, y los Jueces Alfonso de Cumpiano y Brau Ramírez.

En adición, ordenamos:

...al Tribunal de Apelaciones de Puerto Rico, Sección Norte, que eleve a este Tribunal los autos originales, o una copia certificada de los mismos, en el caso Núm. SNAP92–0043, *El Pueblo de P.R.* v. *Santiago Lugo*, incluyendo la Exposición Narrativa de la Prueba. Resolución de 5 de febrero de 1993.

El Procurador General de Puerto Rico ha comparecido en cumplimiento de la orden de mostrar causa emitida. Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

I

Durante el transcurso del juicio celebrado a nivel de instancia, el apelante-peticionario ejercitó su derecho a testificar en su propia defensa. Habiendo terminado el interrogatorio directo y estando en la etapa del contrainterrogatorio por el representante del ministerio Fiscal sucedió —conforme surje de las págs. 32, 33, 34 y 35 de la Exposición Narrativa de la Prueba certificada como correcta por el juez de instancia— *lo siguiente*:

*Fiscal: Usted fue llevado el mismo día 6 de noviembre de 1991 ante el juez instructor. ¿Se acuerda quién fue el magistrado?*
Testigo: No me...
F: ¿Honorable Juez?
T: No me acuerdo.
F: ¿No se acuerda?
T: No.
F: ¿Era hombre o era mujer?
T: Yo creo que era una mujer.
F: *Bien, era una mujer. Y allí esa Juez que le instruyó de cargos escuchó prueba y usted estaba de frente.*
T: Es correcto.
F: *Cuando escuchó la prueba, ¿usted le dijo que eso era mentira, que usted no tenía que ver nada con este caso?*
*Defensa*: Vuestro Honor, yo no quisiera interrumpir, pero el Tribunal Supremo ha resuelto que eso no se puede hacer. *Ha dicho que el fiscal que haga eso merece la más severa repri-*

menda, porque está comentando el silencio del acusado, que él tiene derecho de abstenerse de hacer ninguna expresión en todas las etapas del procedimiento. A mi no me gustaría interrumpir, pero es tan impropio y el Tribunal Supremo lo ha censurado como una de las prácticas más indignas de un fiscal. Yo le puedo traer la jurisprudencia. Su señoría la conoce, donde dice que merece la más severa reprimenda un fiscal que haga eso, porque es un derecho constitucional de un acusado abstenerse de hacer declaración en todas las etapas del procedimiento y eso no puede operar en su contra. Yo no quisiera interrumpir, pero me han obligado las circunstancias y por eso levanto ese reparo.

Juez: Con lugar la objeción, absténgase la compañera fiscal de ese tipo de pregunta.

F: Podemos acercarnos a su señoría, porque no quiero comentarlo delante del jurado.

J: Acérquese si lo desea.

D: Yo no tengo reparo a que ella se acerque, vuestro honor.

J: Adelante, compañera fiscal, la próxima pregunta.

F: Voy a cambiar la pregunta. ¿Le declaró usted a la juez que le...

D: Vuestro Honor, la verdad es que yo me siento..., me siento apenado...

F: Estoy cambiando la pregunta.

D: que personas que han estudiado derecho no lo apliquen en los tribunales.

J: Deje que ella haga la pregunta. Haga la pregunta fiscal.

F: Si le declaró en la vista de determinación de causa el día 6 de diciembre, ¿declaró usted ante la honorable juez? Esa es la pregunta.

D: Vuestro Honor, que yo hasta me abochorno de que suceda esto. O sea, si yo hubiese pensado que iba a caer la cosa en un nivel tan antijurídico, hubiese venido preparado para presentar los casos; que es una cosa tan elemental que es inconcebible que se pretenda hacer esto para uno tratar de ganar un caso cuando la vorágine del barco se hunde. Esto es una cosa que me da pena.

F: Esto es lo que no se debe soportar aquí.

D: Yo tengo la jurisprudencia en mi oficina porque un fiscal desafortunadamente...

F: Le vamos a pedir que se retiren las damas y caballeros del jurado.

D: Que no se retiren.

J: No pueden hablar los dos a la vez. Compañera fiscal tenga la bondad de hacer silencio en lo que termina la defensa. Termine compañero.

D:   Yo tengo la jurisprudencia abundante en mi oficina por-
que desafortunadamente sucedió lo mismo en otro caso. Si su
señoría quiere que yo traiga esa información, yo voy corriendo a
mi oficina y en cinco minutos estoy de regreso, donde el Tribu-
nal Supremo decide que a un fiscal que haga lo que ella ha
hecho se le dé la más severa reprimenda en el tribunal y se le
advierta al jurado que no considere eso, porque es una conducta
impropia de un fiscal hacer lo que [la] distinguida compañera
está haciendo.
    J:   Bien, sometido.
    D:   Sí, señor.
    J:   *Con lugar la objeción. Compañera, haga otra pregunta.*
(Énfasis suplido.) *Exhibit* III, págs. 32–35.

Como podemos notar, de lo anteriormente transcrito
surge con Meridiana claridad: que el representante del Mi-
nisterio Público efectivamente —de manera sustancial, di-
recta, e inequívoca— "comentó el silencio del acusado"; que
la representación legal del acusado apelante oportuna-
mente objetó dicha acción o conducta; y que el juez que
presidió el proceso, a pesar de que declaró con lugar la
objeción de la defensa a esos efectos, ni reprendió al Fiscal
por ello ni instruyó a los señores del Jurado al respecto
conforme establece y ordena nuestra jurisprudencia sobre
la materia.

Esto es, no hay duda de que se cometió el tercer error
señalado. *¿Constituye ello base suficiente para que decrete-
mos la revocación de la sentencia apelada y devolvamos el
caso al tribunal de instancia para la celebración de un
nuevo juicio?*

## II

La Constitución del Estado Libre Asociado de
Puerto Rico le garantiza a toda persona acusada de la su-
puesta comisión de un delito público —en nuestra jurisdic-
ción— el derecho a que su inocencia o culpabilidad se dilu-
cide en un juicio justo, público e imparcial, juicio que tiene
como propósito la búsqueda de la verdad; teniendo el Es-
tado la obligación y responsabilidad de demostrar, en ese

juicio, la culpabilidad del imputado más allá de duda razonable a base de prueba pertinente y admisible, y de las inferencias razonables que de la misma puedan hacerse, y no a base de influencias, o estratagemas, extrañas al proceso y a nuestro sentido de justicia.

Como corolario, o garantía adicional, de ese mandato constitucional de índole general, la Sec. 11, Art. II de nuestra Constitución, L.P.R.A., Tomo 1, ed. 1982, pág. 308, decreta, en lo pertinente, que "[n]adie será obligado a incriminarse mediante su propio testimonio y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra". Este *fundamental* precepto constitucional tiene su origen, naturalmente, en la *presunción de inocencia* que cobija a todo ciudadano que es acusado de la supuesta comisión de un delito público en nuestra jurisdicción. *Pueblo v. Esquilín París*, 98 D.P.R. 505 (1970).

No puede enfatizarse lo suficiente el hecho de que ese derecho constitucional, a declarar o no declarar y/o a no incriminarse, *cobija o protege al imputado de delito a través de todo el proceso criminal*. Véase *Pueblo v. Esquilín París*, ante, pág. 516. Dicho en otra forma, y de manera más directa, si el acusado decide tomar la silla testifical durante la celebración del juicio como testigo en su propia defensa, *el Estado no puede confrontarlo con el hecho de que así no lo hizo en etapas anteriores al juicio*.

Si así lo hiciera el representante del ministerio público, dicho funcionario estaría incurriendo en lo que se conoce como "comentar el silencio del acusado", *lo cual es impermisible en nuestra jurisdicción*. No puede ser de otra forma. Ello así, ya que el comentar el silencio del acusado *equivale*, a todos los fines prácticos, a traer a la mente del juzgador —por aquello "de él que calla, otorga"— prueba similar a la de una *admisión* de culpabilidad. Esto es, el *propósito infame* que persigue el "comentario al silencio del acusado" lo es el de convencer al juzgador de los hechos de

que ese acusado —al no hablar, protestar o clamar por su inocencia, teniendo la oportunidad para hacerlo— "admitió", mediante su silencio, ser responsable de los hechos que se le imputan.

■ Dicha situación, de permitirse, resulta ser *extremadamente perjudicial* para el acusado por razón de que si algo demuestra la práctica de la profesión en el campo de lo penal lo es que, de ordinario, una de las pruebas más incriminatorias, perjudiciales y devastadoras con que puede contar el Ministerio Fiscal contra un imputado de delito lo es la de que éste admitió la comisión del delito que se le imputa. Ello, naturalmente, tiene un *mayor impacto perjudicial* en casos en que la inocencia o culpabilidad del acusado es determinada por un jurado.

Ello así ya que, como correctamente expresara este Tribunal en *Pueblo v. Guzmán Camacho*, 116 D.P.R. 34, 38 (1974), el:

"...jurado no está habituado a la prudencia del juez, que espera conocer la totalidad de las pruebas, para luego inferir de ellos su convicción. Por el contrario, lo impresionan las pequeñeces y se torna daltónico en cuanto a pruebas más graves. A veces una fruslería procesal, a la cual no le daría importancia alguna el técnico, llega a ser como el punto céntrico de orientación mental, suficiente para convencer en uno u otro sentido." E. Altavilla, *Sicología Judicial*, Ed. Depalma, Buenos Aires, 1970, Vol. II, págs. 1198-1199.

■ Seguramente debido a todo lo anteriormente expresado es que, ante una situación en que el Fiscal "comentó el silencio del acusado" en presencia de los señores del Jurado, expresamos, y ordenamos, hace más de cuatro (4) décadas en *Pueblo v. Díaz*, 69 D.P.R. 621, 629 (1949), que:

El derecho de un acusado a no declarar y a que tal circunstancia no establezca presunción alguna en su contra *no* debe ser invadido por el ministerio público con comentarios adversos ni insinuaciones de clase alguna. *Si lo fuera, debe recibir del juez que presida el juicio la más severa e inmediata recriminación por conducta impropia; y el jurado ser instruido por la*

*corte inmediatamente en forma apropiada, de suerte que en el
ánimo de los juzgadores de hecho no pueda quedar vestigio al-
guno de tales comentarios vertidos ante ellos.* (Énfasis suplido.)

■ *Y es que no puede ser de otra manera.* Todas las
personas que están envueltas en la difícil y delicada misión
de impartir justicia en nuestro País —en especial, los jue-
ces— *tienen la obligación de velar porque los procesos judi-
ciales se lleven a cabo en la forma más correcta, justa e
imparcial que sea posible.* En lo que respecta al campo de
lo criminal, conviene recordar las sabias expresiones de
este Tribunal en *Reyes v. Tribunal Superior*, 84 D.P.R. 29,
37 (1961), a los efectos de que:

> No por haberse expresado en innumerables ocasiones debe
> dejarse de repetir ... uno de los derechos más preciados que
> tiene el ciudadano en nuestra comunidad es que cuando se le
> acusa de delito *se le juzgue en tales circunstancias que el pro-
> ceso que se le celebre esté rodeado de todas las garantías que
> hacen posible un juicio justo.* (Énfasis suplido.)

Un juicio justo, naturalmente, *no* significa un juicio
perfecto. Los procedimientos judiciales, no hay duda, son
dirigidos por, y dependen de, los seres humanos. No pode-
mos exigir, en consecuencia, que los procesos criminales
que se celebran en nuestra jurisdicción se lleven a cabo
libre de errores. Es deber de todos, sin embargo, *aspirar y
velar porque dichos procesos sean justos e imparciales.* De
hecho, ello constituye un mandato constitucional.

### III

El Tribunal de Apelaciones, en la sentencia confirmato-
ria que emitiera el 8 de diciembre de 1992, resolvió, en
síntesis, en cuanto al tercer señalamiento de error res-
pecta, que el mismo, de haberse cometido, *no* conllevaba la
revocación de la sentencia condenatoria.

Dicho foro judicial, acogiendo la posición expuesta por la
Oficina del Procurador General de Puerto Rico, consideró,

*en primer lugar*, que el comentario al silencio del acusado en el presente caso había sido uno de "corta duración", el cual había sido debidamente subsanado por el tribunal de instancia al declarar con lugar la objeción de la defensa.

■     *Por otro lado*, y citando al Profesor Chiesa,[2] expresó dicho foro judicial que la "norma general es que algún tipo de comentario por el Fiscal sobre el silencio del acusado no acarrea la disolución automática del proceso criminal (decretar un *mistrial*) ni la revocación automática de una convicción".

Por último, dicho foro apelativo aplicó al caso la doctrina del "error constitucional no perjudicial", elaborada por el Tribunal Supremo de Estados Unidos en *Chapman v. United States*, 386 U.S. 18 (1967). Al así hacerlo, resolvió que un "examen de la totalidad de la prueba desfilada no sostiene una absolución y tampoco refleja que el comentario al silencio del acusado constituyó un error que de no haberse cometido el resultado del juicio hubiese sido distinto". *Exhibit*, pág. 12.

## IV

*No estamos de acuerdo*; ello, por varias razones. En primer lugar, realmente *no* es correcta la apreciación fáctica-jurídica que hizo el Tribunal de Apelaciones de la situación ocurrida a nivel de instancia. Si algo demuestra una lectura de la Exposición Narrativa de la Prueba lo es que el incidente relativo al comentario del silencio del acusado ciertamente *no* fue uno de "corta duración". Es más, ese dato no es lo más importante en esta clase de situaciones; *lo verdaderamente determinante es si en efecto se comentó el silencio del acusado en una forma directa, intensa e inequívoca y si el tribunal de instancia efectivamente tomó la*

---

[2] E.L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. 1, Sec. 4.2, pág. 195.

*acción pertinente y procedente para subsanar la situación.*
En cuanto a este último aspecto de la cuestión, *resulta obvio que el juez de instancia no cumplió con la norma, clara y precisa, que este Tribunal estableció en Pueblo v. Díaz,* ante. La escueta expresión de "con lugar la objeción" *no* subsana la conducta impermisible en que incurrió el Fiscal en el presente caso.

Por otro lado, y aun cuando estamos contestes con lo expuesto por el Tribunal de Apelaciones —citando al Profesor Chiesa— a los efectos de que la norma general es de que "algún [o cualquier] tipo de comentario" sobre el silencio del acusado necesariamente no acarrea la revocación automática de una convicción, *no puede enfatizarse lo suficiente la importancia de que los tribunales de instancia observen la norma establecida en el citado caso de Pueblo v. Díaz,* ante, esto es, que el juez inmediatamente después de ocurrido el incidente reprenda, en forma severa, al Fiscal y que, en adición, inmediatamente instruya a los señores del Jurado en forma tal que no quede en el ánimo de éstos vestigio alguno del comentario realizado; *acción correctiva judicial que no fue tomada en el presente caso.*(³)

Por último —ya en cuanto a la doctrina del "error constitucional no perjudicial", establecida originalmente por el Tribunal Supremo federal en *Chapman v. United States,* ante,(⁴) y partiendo de la premisa de que la misma es de aplicación en el presente caso, aún en ausencia de la acción correctiva inmediata por parte del tribunal de instancia— un examen de los autos revela una pobre argumentación, por parte del Estado, con el propósito de convencer a este

---

(³) El hecho de que, posteriormente y en la etapa de las instrucciones generales al Jurado, el magistrado que preside el proceso escuetamente instruya al Jurado en cuanto al derecho del acusado a declarar o no declarar no subsana el error cometido. *Pueblo v. Perales Figueroa,* 92 D.P.R. 724, 727 (1965); *Pueblo v. Velázquez,* 72 D.P.R. 42 (1951).

(⁴) Como es sabido, en dicho caso el Supremo Federal resolvió que cuando se trata de un "error constitucional", para que el mismo pueda ser considerado como uno "no perjudicial" por el tribunal apelativo, dicho foro tiene que estar convencido de ello "mas allá de duda razonable"; obligación que recae sobre el Estado.

Tribunal, más allá de duda razonable, de que el error cometido a nivel de instancia fue uno "no perjudicial". *Pueblo v. Rosaly Soto*, 128 D.P.R. 729 (1991); *Pueblo v. Ruiz Torres*, 127 D.P.R. 612 (1991); *Pueblo v. Pellot Pérez*, 121 D.P.R. 791 (1988).

En el caso de autos la *magnitud* del error cometido por el Ministerio Fiscal, comentando el silencio del acusado en una forma sustancial y directa, *y la ausencia total* por parte del juez de unas instrucciones enérgicas, oportunas y apropiadas que subsanaran —*si es que se podía subsanar*— dicho error, *privaron al acusado de un juicio justo e imparcial.* Nuestra decisión *no* se basa en la *mera* comisión del referido error constitucional, sino en su *patente* intensidad y magnitud. *Pueblo v. Perales Figueroa*, ante. En resumen, procede revocar el dictamen del tribunal de instancia y ordenar la celebración de un nuevo juicio.[5]

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García disintió "por coincidir con el análisis del Tribunal de Apelaciones, Sección Norte, a los efectos de que el comentario fue subsanado mediante las instrucciones al Jurado". El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

---

[5] En cuanto a la devolución del caso al tribunal de instancia para la celebración de un nuevo juicio, véase *Pueblo v. Martínez Torres*, 126 D.P.R. 561 (1990).