EL PUEBLO DE PUERTO RICO, apelado, *v.* MARCELINO CANINO ORTIZ, acusado y apelante.

*Número:* CR-93-33 *Resuelto:* 7 de diciembre de 1993

*Mario A. Rodríguez, Margarita Carrillo Iturrino, Mario A. Rodríguez Torres* y *Jeanette Soto Vega*, abogados del apelante; *Reina Colón de Rodríguez, Subprocuradora General Interina*, y *Grisel Hernández Esteves, Procuradora General Auxiliar*, abogadas de El Pueblo.

Eʟ Juez Asociado Señor Rebollo López emitió la opinión del tribunal.

El presente recurso tiene, como trasfondo fáctico, una de esas situaciones criminosas que resultan difíciles de enten-

der y aceptar: el abuso sexual de un niño de tierna edad por un adulto, pariente del menor, en el cual el niño confiaba.

El recurso, por otro lado, plantea interesantes cuestiones de derecho que ameritan detenida consideración y análisis por este Tribunal; en específico, la admisibilidad y extensión, del testimonio pericial en casos de esta índole bajo las disposiciones de las Reglas 52 y 57 de Evidencia, 32 L.P.R.A. Ap. IV, y, si constituye un "comentario al silencio del acusado" la instrucción, sancionada por el Manual de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico, relativa al examen "con cautela" del testimonio de las víctimas en casos de esta naturaleza.

I

El Ministerio Fiscal radicó ante el Tribunal Superior de Puerto Rico, Sala de Bayamón, tres (3) pliegos acusatorios contra Marcelino Canino Ortiz mediante los cuales le imputó a éste la supuesta comisión de *dos* (2) delitos de infracción al Art. 105 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4067[1] —alegadamente cometidos los mismos "allá en o para el *mes de mayo de 1990*" (énfasis suplido, Alegato del apelante, pág. 21) y "allá en o para el *mes de agosto de 1990*" (íd.)— y *una* infracción al Art. 103 (33 L.P.R.A. sec. 4065), *en grado de tentativa*, del referido Código Penal,[2] supuestamente cometida "allá en o para el *mes de mayo de 1990*". (Énfasis suplido.) Íd.

Celebrado el juicio, *ante jurado*, y habiendo sido Canino Ortiz declarado culpable en todos y cada uno de los cargos imputados, el tribunal de instancia lo sentenció a cumplir diez (10) años de prisión en cada cargo, a ser cumplidas dichas penas en forma *consecutivas* entre sí. Inconforme,

[1] Actos lascivos e impúdicos.
[2] Sodomía.

Canino Ortiz apeló ante este Tribunal imputándole al foro de instancia la supuesta comisión de siete (7) errores, a saber:

### PRIMER ERROR:

Se vulneraron los derechos al debido proceso de ley y a un juicio justo al habérsele denegado al apelante una solicitud de especificaciones en que se requerían las fechas en que alegadamente habían ocurrido los hechos imputados. Ello impidió, además, que la defensa pudiera prepararse adecuadamente y presentar defensa de coartada.

### SEGUNDO ERROR:

Erró el tribunal de instancia al denegar una solicitud de disolución del jurado amparada en la negativa del Estado a informar las fechas en que habían ocurrido los supuestos hechos delictivos, cuando en su declaración judicial la supuesta víctima fue capaz de precisar las fechas en que ocurrieron los hechos.

### TERCER ERROR:

Incidió la sala de instancia al admitir la declaración del sicólogo que evaluó al menor a pesar del perjuicio sustancial que tal declaración ocasionaba y su escaso valor probatorio.

### CUARTO ERROR:

Erró el tribunal de instancia al no permitir que durante el contrainterrogatorio la defensa interrogara al menor en relación a unas fotografías sobre el lugar en donde alegadamente habían ocurrido los hechos.

### QUINTO ERROR:

No se estableció la culpabilidad del apelante más allá de duda razonable ni se rebatió la presunción de inocencia.

### SEXTO ERROR:

Se comentó el silencio del acusado al instruirle al jurado, con respecto a los delitos imputados, que por su naturaleza los únicos testigos son la parte perjudicada y el acusado.

### SEPTIMO ERROR:

Incidió el magistrado sentenciador al imponer sentencia con agravantes [y al no referir el caso para informe presentencia]. Alegato del apelante, págs. 19–20.

## II

Tanto el Ministerio Fiscal como el acusado presentaron prueba testifical. La prueba del Estado consistió, *de manera principal*, de la declaración del menor P.J.O.C., de su señora madre, la Sra. Iris Nereida Canino Báez, y el psicólogo Miguel Licha Vaquero.([3])

El testimonio del referido menor —el cual, para la fecha de los hechos, contaba con ocho (8) años de edad— fue claro y conciso. El apelante —quien era tío abuelo del menor— operaba un negocio de reparación de automóviles. Habiendo demostrado, el menor, inquietud y destreza por la mecánica, la madre de éste le pidió a su tío que le enseñara dicha ocupación al menor. Los actos imputados —aberrantes y asqueantes— fueron alegadamente cometidos por el apelante tanto en el taller de mecánica como en la casa de éste, y la del menor, durante un período aproximado de cuatro (4) meses. El testimonio del menor —considerando su tierna edad y la dificultad inherente que tiene todo testigo para declarar en esta clase de casos— respecto a lo sucedido fue, sorprendentemente, detallado. El mismo versa sobre relaciones, y actuaciones, anormales entre un adulto y un niño menor de edad que, ciertamente, contiene todos los elementos esenciales requeridos por los artículos de ley referentes a los delitos de sodomía y actos lascivos o impúdicos. Realmente resulta innecesario reproducirlo; no adelantamos nada, que no sea causarle repulsión al lector, con hacerlo.([4])

La situación quedó al descubierto cuando el menor, preocupado por la posibilidad de que "podía tener un bebé" y

---

([3]) Como testigos del Ministerio Público declararon, *en adición*, la Dra. Milagros Luiggi, pediatra, y el Dr. Carlos Robles Orama, médico generalista. El testimonio prestado por los referidos facultativos médicos realmente no aporta mucho a la solución de la interrogante ante nuestra consideración, esto es, sobre la inocencia o culpabilidad del apelante Canino Ortiz.

([4]) Véanse: págs. 1 a la 11 de la Exposición Narrativa de la Prueba, preparada por la representación legal del apelante, y certificada como correcta por el tribunal de instancia.

pensando que podía ser considerado homosexual, le informa a su madre una noche de lo que había venido ocurriendo con el apelante. Luego de que ésta indagara sobre lo sucedido —informándole el menor que no lo había hecho antes por tenerle miedo al apelante— procedió la madre a llevarlo donde los doctores Luiggi y Robles Orama. Este último no encontró evidencia de laceración anal; declarando, sin embargo, que ello no era índice alguno de que los actos no hubieran sucedido, ello debido al tiempo transcurrido.

La madre procedió, entonces, a llevar a su hijo al psicólogo Licha Vaquero, quien le prestaba servicios de psicología a los empleados y familiares, de la compañía para quien trabajaba la Sra. Canino Báez. Dicho testigo perito declaró que vio al menor, en consulta, en seis (6) ocasiones.([5])

El niño le contó al psicólogo lo sucedido con el apelante y sobre sus dos (2) preocupaciones. El testigo procedió a "calmar" al niño al respecto, explicándole que los varones no pueden quedar embarazados y que lo sucedídole a él con su tío abuelo no significaba que él fuera un homosexual. *Su impresión diagnóstica fue "abuso sexual y trauma psicológico", producto el mismo del mencionado abuso. En opinión del referido psicólogo, el niño no estaba "fantaseando".* Conforme dicho testigo perito, las razones para que el menor no hubiera hablado antes habían sido: que el agresor era, para el niño, una figura de autoridad, pariente cercano, que vivía y trabajaba cerca de su casa, y la tierna edad del niño; todo lo cual hacía difícil que el niño verbalizara lo que estaba ocurriendo.([6])

---

([5]) El tribunal de instancia examinó, preliminarmente y en ausencia del Jurado, al testigo Licha Vaquero al amparo de las disposiciones de la Regla 9 de Evidencia, 32 L.P.R.A. Ap. IV; posteriormente, permitió que dicho testigo declarara en presencia del Jurado.

([6]) Véanse: págs. 22 a la 25 de la Exposición Narrativa de la Prueba, preparada por la representación legal del apelante, y certificada como correcta por el tribunal de instancia.

La prueba de defensa, por su parte, consistió de un psiquiatra —quien nunca examinó al menor— que expresó la opinión de que los niños "tienden a la fantasía" y, en adición, declaró tener dudas respecto al testimonio del psicólogo Licha Vaquero por razón de entender que éste debió haber sometido al menor a ciertas pruebas psicológicas, lo cual éste no hizo. En segundo lugar, se presentó testimonio respecto a la estructura del taller de mecánica; ello con el propósito de contradecir el testimonio del menor. Por último, la defensa presentó prueba sobre la buena reputación de que gozaba el apelante en la comunidad donde vivía y . trabajaba.

## III

Por su importancia, y por ser ésta una materia de "primera impresión" en nuestra jurisprudencia,[7] examinamos, en primer lugar, el *tercer* señalamiento de error. Plantea el apelante, en el excelente alegato que su representación legal radicara ante este Tribunal, que erró el tribunal de instancia al permitir el testimonio del psicólogo que había atendido al menor.

Como es sabido, esta materia está regulada por las disposiciones de las Reglas 52 a la 59 de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV. Resultan ser de *singular* importancia, y pertinencia, al caso de autos las disposiciones de las Reglas 52 y 57 de Evidencia, ante, las cuales establecen:

---

(7) En *Pueblo v. Ríos Maldonado*, 132 D.P.R. 146 (1992), a pesar de que se admitió en evidencia a nivel de instancia la declaración de un testigo perito sobre el hecho del abuso sexual y no obstante el hecho de que el Tribunal, en la opinión emitida, citó in extenso dicho testimonio, este Foro *no* emitió juicio, ni se expresó, sobre la pertinencia y admisibilidad de prueba de esa naturaleza en casos de esta índole; ello debido a que el apelante *no* hizo planteamiento alguno al respecto.

Regla 52

Cuando conocimiento científico, técnico o especializado sea de ayuda para el juzgador entender la evidencia o determinar un hecho en controversia, un testigo capacitado como perito en relación con la materia sobre la cual va a declarar podrá testificar en forma de opiniones o de otra manera.

Regla 57

No será objetable la opinión o inferencia de un perito por el hecho de que se refiera a la cuestión que finalmente ha de ser decidida por el juzgador de los hechos.

Como surge de una simple lectura de las antes transcritas disposiciones reglamentarias, el *criterio rector* en relación con prueba de índole pericial lo es que la misma *resulte de ayuda* para el juzgador de los hechos;[8] siendo admisible dicho testimonio pericial *aun cuando* el mismo verse, precisamente, sobre la "cuestión" a decidir (*ultimate fact*) por el referido juzgador de los hechos. Véanse: *Pueblo v. Marcano Pérez*, 116 D.P.R. 917, 929–930 (1986); *Velázquez v. Ponce Asphalt*, 113 D.P.R. 39, 48 (1982); *U.S. v. St. Pierre*, 812 F.2d 417, 419 (8vo Cir. 1987).

En lo que concierne a la *situación específica* hoy ante nuestra consideración, *esto es, la admisibilidad de prueba pericial en casos de abuso sexual de menores*, no debe perderse de vista que, por lo general, esta clase de situaciones se da, a solas, entre adultos y niños de tierna edad; hecho que, en la mayoría de los casos, tiene la consecuencia de dificultar la investigación, y esclarecimiento, de dichos casos debido, precisamente, a la tierna edad de los perjudicados, los cuales muchas veces no pueden declarar en forma articulada y detallada. J.E.B. Myers y otros, *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L. Rev. 1 (1989); véase, en específico, sobre este aspecto: *Pueblo v. Rivera Robles*, 121 D.P.R. 858, 863–865 (1988).

---

[8] Lo cual significa, naturalmente, que dicha prueba no sólo es pertinente (Regla 18 de Evidencia, 32 L.P.R.A. Ap. IV) sino que no procede su exclusión por ser la misma de valor probatorio de "poca significación". Regla 19 de Evidencia, 32 L.P.R.A. Ap. IV.

Dicha situación ha obligado al Estado, sobre quien recae la obligación de procesar a las personas acusadas de la comisión de estos delitos, a recurrir al uso de *testimonio pericial* con el propósito de que el foro judicial pueda emitir juicio sobre la culpabilidad o inocencia de los acusados. V. Serrato, *Expert Testimony in Child Sexual Abuse Prosecutions: A Spectrum of Uses*, 68 B.U.L. Rev. 155, 163 (1988).

A esos efectos, *se ha desarrollado la teoría del "síndrome del niño abusado sexualmente"*, conforme a la cual se expone que un niño que ha sido objeto de abuso sexual exhibe, de ordinario, una serie de "características" propias de esa situación, las cuales pueden ser reconocidas por el testigo pericial. R.J. Roe, *Expert Testimony in Child Sexual Abuse Cases*, 40(Núm. 1) U. Miami L. Rev. 97, 108 (1985). Entre otras, dichos niños exhiben o demuestran, miedo, confusión, vergüenza, pesadillas, incontinencia, retraimiento, y bajo aprovechamiento escolar. Serrato, ante, pág. 159.

No hay duda, en consecuencia, que en un caso de alegado abuso sexual —especialmente en situaciones donde el menor perjudicado es de tierna edad— el testimonio pericial resulta ser de *incalculable ayuda* al juzgador de los hechos en su difícil función de pasar juicio sobre la inocencia o culpabilidad del acusado de esta clase de delito; *razón por la cual resolvemos que prueba de esta naturaleza es admisible en nuestra jurisdicción bajo las disposiciones pertinentes, antes mencionadas, de las Reglas de Evidencia.*

Esto es, nuestros tribunales de instancia deberán permitir —vía el testimonio de un perito debidamente cualificado— prueba sobre las *características generales* que, de ordinario, exhiben las víctimas de abuso sexual; prueba sobre si la alegada víctima del abuso, en el caso particular, *exhibe o no* dichas características generales; y si en la *opinión del perito*, por ende, el niño ha sido o no

víctima de abuso sexual. Véanse: Regla 57 de Evidencia, ante; *Pueblo v. González Román*, 129 D.P.R. 933 (1992); *Pueblo v. Marcano Pérez*, ante; *Velázquez v. Ponce Asphalt*, ante; *State v. Scheffelman*, 820 P.2d 1293 (Mont. 1991); *State v. Kim*, 645 P.2d 1330 (Haw. 1982).[9]

■ Ahora bien —y aun cuando estamos conscientes del hecho de que prueba de la naturaleza arriba descrita tiene el efecto inevitable de, hasta cierto punto, "corroborar" la declaración del menor y, por ende, de darle visos de credibilidad al testimonio prestado por éste— los tribunales de instancia *no* deben permitir que el perito opine, *directamente*, respecto a la veracidad de la versión del menor o sobre la confiabilidad de su testimonio. Véanse: *United States v. Azure*, 801 F.2d 336 (8vo Cir. 1986); *Kruse v. State*, 483 So.2d 1383 (1986); *California v. Roscoe*, 215 Cal. Reptr. 45 (1985); *U.S. v. Spotted War Bonnet*, 882 F.2d 1360 (8vo Cir. 1989).

■ Reconocemos que la "línea, o distinción, es fina y, quizás, difícil de deslindar", pero, es importante que la misma sea establecida. *La función de adjudicar credibilidad es exclusiva del juzgador de los hechos.* Véanse: *Pueblo v. Montes Vega*, 118 D.P.R. 164 (1986); O.E. Resumil, *Práctica Jurídica de Puerto Rico—Derecho Procesal Penal*, New Hampshire, Ed. Equity, 1990, pág. 68. No podemos olvidar que los psicólogos o psiquiatras *están entrenados para reconocer, o diagnosticar, condiciones o enfermedades*; ellos *no* están capacitados, sin embargo, para determinar, quien dice la verdad. *United States v. Azure*, ante.

A base de lo anteriormente expuesto, y de un examen minucioso y detallado de la Exposición Narrativa de la Prueba, *resolvemos que no se cometió el tercer error*

---

[9] Debe mantenerse presente que el juzgador de los hechos siempre mantiene la facultad, o discreción, para *aceptar o rechazar* la opinión emitida por el perito. *Pueblo v. Marcano Pérez*, 116 D.P.R. 917 (1986).

*imputado.* Si bien es correcto que la prueba presentada por el Estado en el presente caso —por medio del psicólogo Licha Vaquero— *no* versó sobre las características generales del síndrome del niño abusado sexualmente, y que dicho perito no especificó cuáles de dichas características exhibía el menor perjudicado, lo cierto es que el referido perito *se limitó* a declarar que, a base de las observaciones que hizo en las seis (6) ocasiones en que atendió al niño perjudicado en el presente caso, era de la opinión —*o impresión diagnóstica*— de que el mismo había sido objeto de abuso sexual. No hubo referencia, o transgresión alguna, en su testimonio referente a la veracidad o no de la versión que brindaba el niño.[10] Bajo esas circunstancias, somos del criterio que *no* se cometió el error imputado ya que no se usurpó la función exclusiva del juzgador de los hechos de adjudicar credibilidad.

IV

Mediante el *sexto* señalamiento de error, el apelante plantea una cuestión que resulta ser, igualmente, de "primera impresión". Sostiene que el *tribunal de instancia* incurrió en un "comentario al silencio del acusado" al instruir al Jurado que, dada la naturaleza de los delitos imputados, en esta clase de situaciones "los *únicos testigos* son la parte perjudicada y el acusado". (Énfasis suplido.) Alegato del apelante, pág. 20.

La instrucción en controversia, según la misma surge del Manual de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico, aprobado por el Tribunal

---

[10] La aseveración del psicólogo a los efectos de que, en su opinión, el niño "no fantaseaba" *no* equivale a ello. Un examen de la Exposición Narrativa de la Prueba demuestra que, dado el contexto en que se hizo la misma, dicha aseveración se hizo con el propósito de enfatizar su "diagnóstico de abuso sexual".

Supremo de Puerto Rico, 27 de marzo de 1980, pág. 182,[11] lee:

No es esencial que el testimonio de la víctima sea corroborado por otra evidencia, siempre que del conjunto de la prueba ustedes estén convencidos fuera de toda duda razonable de la culpabilidad del acusado. *Sin embargo*, una imputación como la que se ha hecho al acusado, en términos generales, se hace con facilidad, y una vez hecha es difícil de desmentir aun siendo inocente éste. *Por la naturaleza del delito, usualmente los únicos testigos son la parte perjudicada y el acusado.* Por tanto les instruyo para que *examinen con cautela* el testimonio de la víctima; pero el hecho de que la imputación es fácil de hacer y difícil de desmentir no debe obstar para un veredicto de culpabilidad si ustedes están convencidos, fuera de duda razonable, que el acusado es culpable. (Énfasis suplido.)

En apoyo de su novel teoría, sostiene la representación legal del apelante, en síntesis, que dicha instrucción tuvo el efecto de llevar a la mente de los señores del Jurado, o insinuar, que siendo "los únicos testigos ... la parte perjudicada y el acusado", el Jurado podía entender que el apelante en el presente caso venía en la obligación de tomar la silla de los testigos y desmentir la imputación que le hacía el menor; insinuación que, alegadamente, resulta extremadamente perjudicial en vista de que el apelante, en el ejercicio constitucional de su derecho a no hacerlo, optó en el presente caso por no declarar.

■ Recientemente, en *Pueblo v. Santiago Lugo*, 134 D.P.R. 623 (1993), tuvimos ocasión de expresarnos al respecto. Allí, en lo pertinente, dijimos:

La Constitución del Estado Libre Asociado de Puerto Rico le garantiza a toda persona acusada de la supuesta comisión de un delito público —en nuestra jurisdicción— el derecho a que su inocencia o culpabilidad se dilucide en un juicio justo, público e imparcial, juicio que tiene como propósito la búsqueda de la verdad; teniendo el Estado la obligación y responsabilidad

---

[11] Dicho manual de instrucciones, como es sabido, tiene "caracter persuasivo" y su contenido goza de una "presunción de corrección". *Pueblo v. Mangual Hernández*, 111 D.P.R. 136 (1981).

de demostrar, en ese juicio, la culpabilidad del imputado más allá de duda razonable a base de prueba pertinente y admisible, y de las inferencias razonables que de la misma puedan hacerse, y no a base de influencias, o estratagemas, extrañas al proceso y a nuestro sentido de justicia.

Como corolario, o garantía adicional, de ese mandato constitucional de índole general, la Sec. 11, Art. II de nuestra Constitución, L.P.R.A., Tomo 1, ed. 1982, pág. 308, decreta, en lo pertinente, que "[n]adie será obligado a incriminarse mediante su propio testimonio y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra". Este *fundamental* precepto constitucional tiene su origen, naturalmente, en la *presunción de inocencia* que cobija a todo ciudadano que es acusado de la supuesta comisión de un delito público en nuestra jurisdicción. *Pueblo v. Esquilín París*, 98 D.P.R. 505 (1970).

. . . . . . . .

... "*comentar el silencio del acusado*" ... *equivale, a todos los fines prácticos, a traer a la mente del juzgador —por aquello "de el que calla, otorga"— prueba similar a la de una admisión de culpabilidad. Esto es, el propósito infame que persigue el "comentario al silencio del acusado" lo es el de convencer al juzgador de los hechos de que ese acusado —al no hablar, protestar o clamar por su inocencia, teniendo la oportunidad para hacerlo— "admitió", mediante su silencio, ser responsable de los hechos que se le imputan.*

Dicha situación, de permitirse, resulta ser *extremadamente perjudicial* para el acusado por razón de que si algo demuestra la práctica de la profesión en el campo de lo penal lo es que, de ordinario, una de las pruebas más incriminatorias, perjudiciales y devastadoras con que puede contar el Ministerio Fiscal contra un imputado de delito lo es la de que éste admitió la comisión del delito que se le imputa. Ello, naturalmente, tiene un *mayor impacto perjudicial* en casos en que la inocencia o culpabilidad del acusado es determinada por un jurado.

Ello así ya que, como correctamente expresara este Tribunal en *Pueblo v. Guzmán Camacho*, 116 D.P.R. 34, 38 (1974), el:

"...jurado no está habituado a la prudencia del juez, que espera conocer la totalidad de las pruebas, para luego inferir de ellos su convicción. Por el contrario, lo impresionan las pequeñeces y se torna daltónico en cuanto a pruebas más graves. A veces una fruslería procesal, a la cual no le daría importancia alguna el técnico, llega a ser como el punto céntrico de orientación mental, suficiente para convencer en uno u otro sentido." E. Altavilla, *Sicología Judicial*, Ed. Depalma, Buenos Aires, 1970, Vol. II, págs. 1198–1199. (Énfasis suplido y en el original.) *Pueblo v. Santiago Lugo*, ante, págs. 628–630.

■ *¿Infringe la transcrita instrucción la garantía constitucional contra la autoincriminación?* Dicho de otra forma, *¿puede considerarse la referida instrucción como un comentario al silencio del acusado?* Atendemos, y resolvemos, la interrogante planteada por el apelante, *por primera vez a nivel apelativo,*([12]) por ser la misma una de gran importancia para nuestro sistema de procedimiento criminal en vista del hecho de que dicha instrucción se transmite con frecuencia a nivel de instancia.

■ Somos del criterio que la instrucción en controversia *no* constituye un comentario al "silencio del acusado"; esto es, *no* infringe el derecho constitucional contra la autoincriminación. Resulta obvio que el apelante indebidamente fracciona —o saca de contexto una frase aislada contenida en— la instrucción en controversia con el objetivo de fundamentar su planteamiento. *Una lectura integral de la referida instrucción demuestra que la misma tiene el propósito de beneficiar, en lugar de perjudicar, a toda persona acusada de la supuesta comisión de delitos de esta naturaleza.* Dicho de una manera más simple, la referida instrucción resulta beneficiosa por cuanto la misma, *por sí sola*, puede tener el efecto de causar *duda razonable* en la mente de los señores del Jurado. Ello así ya que se le instruye a los señores del jurado que, dado el hecho de que esta clase de testimonio es de fácil fabricación, ellos deben mirar con cautela, o recelo, dicho testimonio.([13])

---

([12]) El apelante *no* objetó la instrucción a nivel de instancia, luego de que el magistrado hubiera terminado de impartir las instrucciones a los señores del Jurado y antes de que éstos se retiraran a deliberar.

De *ordinario*, no se puede levantar en apelación, como error, una instrucción no objetada a nivel de instancia. Regla 137 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; *Pueblo v. Ortiz González*, 111 D.P.R. 408, 410 (1981); *Pueblo v. Jiménez Hernández*, 116 D.P.R. 632, 638 (1985); *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 151 (1985).

([13]) Debe mantenerse presente, en adición, que reiteradamente hemos resuelto que las instrucciones que transmite un magistrado a los señores del Jurado deben ser examinadas en forma conjunta y no fraccionadamente, esto es, las unas con las otras. *Pueblo v. Acevedo González*, 95 D.P.R. 355 (1967); *Pueblo v. Negrón*, 79 D.P.R. 296 (1956). A esos efectos, tenemos que un examen de las instrucciones impartidas en el presente caso demuestra que el magistrado que presidió el proceso *claramente*

■ Ello no obstante, *resultando, realmente, super-flua la terminología en controversia* y en aras de lograr que los juicios criminales que se celebren a nivel de instancia sean los más justos e imparciales posibles, *resolvemos que, de hoy en adelante, los jueces de instancia deberán abstenerse de incluir, como parte de la instrucción en controversia, la oración a los efectos de que*: "[P]or la naturaleza del delito, usualmente los únicos testigos son la parte perjudicada y el acusado" (Alegato del apelante, pág. 20); curso de acción que hemos seguido en el pasado. *Cf. Pueblo v. Romero Costa*, 101 D.P.R. 404 (1973); *Pueblo v. París Medina*, 101 D.P.R. 253 (1973).

## V

Discutimos, por estar íntimamente relacionados entre sí, conjuntamente los señalamientos de error primero y segundo. Sostiene el apelante que erró el foro de instancia al negarse a disolver el Jurado al "constatarse" durante el juicio que el ministerio público le había, a sabiendas e indebidamente, negado información que poseía —*y que la defensa había solicitado vía la radicación de un "pliego de especificaciones"*— respecto a las fechas específicas en que, alegadamente, habían ocurrido los hechos delictivos que se le imputaban al apelante. Sostiene ahora, a nivel apelativo, que debido a lo anteriormente expresado resulta procedente la revocación de las sentencias apeladas, *por vio-*

---

instruyó a los señores del Jurado sobre: el deber del Estado de demostrar la culpabilidad del acusado más allá de duda razonable; el derecho constitucional del acusado a declarar o no declarar en su propia defensa; y sobre el hecho de que si éste optaba por así no hacerlo, ese hecho no se podía tomar en su contra. En fin, somos del criterio que cualquier posible perjuicio que pudo haber sufrido el acusado por la fraseología objetada por la defensa en la instrucción en controversia quedó plenamente subsanado por las instrucciones antes mencionadas.

De todas formas —y aun asumiendo, a los fines de la argumentación, que la oración o terminología impugnada en efecto constituye un comentario al silencio del acusado— somos del criterio que nos enfrentamos a la "figura" del "error constitucional no perjudicial". *Chapman v. California*, 386 U.S. 18 (1967); *Pueblo v. Rosaly Soto*, 128 D.P.R. 729 (1991).

*lación al debido proceso de ley,* ya que la actuación del Ministerio Público le privó, entre otras, de presentar la defensa de coartada y de tener una adecuada asistencia de abogado.

Como correctamente señala la representación legal del apelante, en el alegato que radicara, nuestro ordenamiento no contiene una disposición específica, estatutaria o reglamentaria, que regule *directamente* la concesión de un "pliego de especificaciones". *El mismo, sin embargo, ha sido objeto de atención jurisprudencialmente.* A pesar de que no hay duda de que un imputado de delito tiene el derecho constitucional a ser debidamente informado por el Estado de los hechos delictivos que se le imputan, lo cual tiene relación directa con el debido proceso de ley y el derecho a tener una adecuada asistencia de abogado, Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1, hemos resuelto que la concesión de un pliego de especificaciones no es un derecho absoluto y sí una facultad puramente discrecional del tribunal. *Pueblo v. Berdecía,* 59 D.P.R. 318 (1941); J.A. Morales Arroyo, *El pliego de especificaciones y el derecho constitucional del acusado a ser notificado de la naturaleza de la acusación en su contra,* 7 (Núm. 2) Forum 11 (1991).

Ahora bien, y como es de todos conocido, la Regla 35 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, exige que el pliego acusatorio —denuncia o acusación— contenga una exposición de los *hechos esenciales* constitutivos del delito imputado, expresados los mismos en lenguaje claro y sencillo, de manera tal que cualquier persona, de inteligencia promedio, pueda comprender el delito que se le imputa. *Pueblo v. Calviño Cereijo,* 110 D.P.R. 691 (1981). Debiendo cumplir el Estado con esa obligación, *¿qué "hechos" pueden ser solicitados en un pliego de especificaciones?* Obviamente hechos o detalles que, aun cuando no cualifican como hechos esenciales constitutivos del delito, ayudan a "clarificar" la denuncia o acusación. A. Cintrón García, *La solicitud de especificaciones,* 1 (Núm. 3)

Forum 27 (1985); D. Nevares-Muñiz, *Sumario de Derecho procesal penal puertorriqueño*, 2da ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1981, pág. 84.

 *¿Cuándo procede, en fin, una solicitud de especificaciones y qué información puede ser solicitada en la misma?* En nuestro criterio, *la contestación es sorprendentemente sencilla*: cuando la justicia así lo requiera; esto es, cuando la información que se solicita, en la opinión del tribunal, sea necesaria para que el acusado pueda defenderse adecuadamente en el proceso judicial a que el Estado lo somete. *United States v. Balaban*, 26 F. Supp. 491 (D.C. Ill. 1939).

Como surge de la relación de los hechos que hiciéramos al comienzo de la presente ponencia, en los pliegos acusatorios que radicara el Fiscal en el caso de autos se hizo constar que los cargos por actos lascivos o impúdicos ocurrieron "allá en o para el mes de mayo de 1990" (Alegato del apelante, pág. 21) y "allá en o para el mes de agosto de 1990". Íd. En relación con la acusación por tentativa de sodomía, se hizo constar en la misma que los hechos habían ocurrido, alegadamente, "allá en o para el mes de mayo de 1990". Íd. El planteamiento, o señalamiento del apelante, sobre violación al debido proceso de ley, se funda en que, alegadamente, el Fiscal informó, al contestar un pliego de especificaciones a esos efectos, que no podía especificar más las fechas alegadas y que durante el juicio el menor perjudicado "precisó" las fechas en que supuestamente ocurrieron los hechos; información que el Estado, a pesar de alegadamente contar con ella, se negó a brindar en la contestación al pliego de especificaciones.

No hay duda que ante unos pliegos acusatorios fraseados en la forma antes expuesta, respecto a la fecha de ocurrencia de los hechos, el apelante tenía el derecho a radicar una solicitud de especificaciones con el objetivo de que el Estado le especificara o precisara, si es que el Estado podía hacerlo, las fechas en que supuestamente se habían come-

tido los hechos. Ello así ya que —a pesar de los referidos pliegos acusatorios ser "suficientes en derecho", por contener los mismos todos los elementos constitutivos de los delitos imputados— la información solicitada era necesaria para que el acusado pudiera preparar una defensa adecuada. *Pueblo v. Colón*, 52 D.P.R. 413 (1937).

Ahora bien, hemos examinado la Exposición Narrativa de la Prueba. Todo lo que hemos encontrado es que el menor perjudicado, al ser cuestionado más a fondo sobre las fechas, expresó, en cuanto a los hechos ocurridos en el mes de mayo de 1990, que éstos ocurrieron "cuando se estaban acabando las clases". Alegato del apelante, pág. 2. Por otro lado, y en cuanto a los hechos del mes de agosto de 1990, el referido menor expresó que fue "antes de empezar las clases en agosto". Íd., pág. 5.

Esto es, realmente *no* es correcta la alegación del apelante a los efectos de que el Estado le hubiera negado, teniendo conocimiento de ello, las *fechas específicas* en que ocurrieron los hechos. Lo señalado por el menor, durante la celebración del juicio, *no equivale a ello*. Por otro lado, la alegación del apelante de que esta situación impidió que él presentara una defensa de coartada resulta ser, *en vista de lo antes expresado*, puramente especulativa. El apelante *no* informa qué prueba de coartada hubiera estado en posición de presentar a nivel de instancia de haber sabido, de antemano, que los hechos del mes de mayo de 1990 ocurrieron "cuando se estaban acabando las clases en mayo" (Alegato del apelante, pág. 2) y que los del mes de agosto de 1990 sucedieron "antes de empezar las clases en agosto". Íd., pág. 5. En vista a ello, *no* alcanzamos a entender, por último, cómo esta situación tuvo el efecto de afectar la calidad de su representación legal a nivel de instancia, la cual fue excelente.

En resumen —e independientemente del derecho del apelante a radicar un pliego de especificaciones en el pre-

sente caso y a la obligación del Ministerio Público a contestarlo verazmente— *no* se cometieron los errores señalados.

## VI

Igualmente inmeritorios resultan ser los señalamientos de errores cuarto, quinto y séptimo. Examinamos los mismos brevemente.

Mediante el cuarto señalamiento se le imputa al foro de instancia haber errado al negarse a permitir que la defensa, durante el contrainterrogatorio del menor perjudicado, le hiciera a éste preguntas sobre *el contenido* de unas fotos, relativas al lugar (garaje de mecánica) donde alegadamente el acusado había cometido los actos que se le imputaban; ello con el obvio propósito de impugnar, y contradecir, el testimonio brindado al respecto por el menor durante el interrogatorio directo. El error, *de haber sido éste cometido*,[14] es uno *inconsecuente y poco perjudicial.* Ello en vista del hecho de que el propósito que perseguía la defensa con la admisión de dichas fotos lo logró mediante el testimonio del hermano del acusado, quien no sólo declaró in extenso sobre la estructura del negocio sino que identificó las fotos en controversia, las cuales él personalmente había tomado, *siendo las mismas finalmente admitidas en evidencia.*

El quinto señalamiento de error *no* amerita mucha consideración. El mismo es completamente frívolo. La prueba presentada por el Ministerio Fiscal, de ser creída por el juzgador de los hechos, es *suficiente en derecho* para sostener todos y cada uno de los tres (3) delitos que se le imputan al apelante.

---

[14] Un examen de la Exposición Narrativa de la Prueba, relativa a la confrontación del menor con las mencionadas fotos, revela que la defensa, realmente, no le hizo las preguntas apropiadas al menor que son requeridas para que dichas fotos fueran admitidas en evidencia.

Por último, y mediante el séptimo señalamiento de error, cuestiona el apelante las penas de diez (10) años que en cada cargo le impusiera el foro de instancia y, en adición, que se dispusiera que las mismas se cumplieran consecutivamente entre sí. Sostiene que dichas penas resultan "excesivas" dado el hecho de "que el apelante es un primer infractor y [en vista de] su buena reputación en la comunidad". Alegato del apelante, pág. 41.

*Discrepamos.* Establece la Regla 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, *en lo pertinente*, que:

> Se podrán considerar como circunstancias agravantes, entre otras las siguientes:
>
> . . . . . . . .
>
> (a)El delito fue de violencia, se causó grave daño corporal, o amenaza de causarlo y se evidenciaron hechos que revelan una gran crueldad, ningún respeto humano *y un rechazo a las normas de la decencia.*
>
> . . . . . . . .
>
> (c)la víctima era particularmente vulnerable ya fuese *por minoridad* o incapacidad mental o física.
>
> . . . . . . . .
>
> (i)el delito evidencia unos designios criminales planificados. (Énfasis suplido.)

Como correctamente señala el Procurador General, en el alegato que radicara, los actos constitutivos de esta clase de delito, y sus efectos sobre la sociedad en general, son motivo de honda preocupación. Ejemplo de lo anteriormente expresado lo es la Exposición de Motivos de la Ley Núm. 160 de 20 de julio de 1979 (34 L.P.R.A. sec. 1027); legislación mediante la cual *se eliminó el beneficio de sentencia suspendida* a los convictos de actos lascivos o impúdicos cometidos con niños menores de catorce (14) años de edad. Allí se expresó que:

> *El aumento desmedido de los ataques y abusos sexuales en perjuicio de menores de catorce años ha necesitado de una respuesta más vigorosa del Estado para la protección de los más débiles.* A estos efectos se ha enmendado el Artículo 105 de la Ley 115 de 22 de julio de 1974, conocida como Código Penal de

Puerto Rico, con el fin de aumentar la penalidad cuando los actos lascivos e impúdicos sean cometidos en perjuicio de menores de catorce años.

La naturaleza de estos actos repugna a la sociedad y para complementar la medida anterior, esta ley tiene el propósito de excluir de los beneficios de la sentencia suspendida o libertad a prueba los casos de actos lascivos o impúdicos cuando la víctima fuere menor de catorce años. Si bien la Ley de Sentencia Suspendida tiene un propósito rehabilitador, *también tiene el propósito de proteger a la sociedad contra las personas convictas de delito que representen un peligro para la comunidad. Las personas que cometen actos lascivos e impúdicos contra menores de 14 años constituyen un riesgo para la tranquilidad y bienestar de nuestra juventud.* Esta ley va encaminada a evitar ese riesgo. (Énfasis suplido.) 1979 Leyes de Puerto Rico 431–432.

La acción del tribunal de instancia, la cual hoy ratificamos, es ejemplo de la "respuesta más vigorosa" que reclama nuestra sociedad en "protección de los más débiles". Véase *Pueblo v. Castro Muñiz*, 118 D.P.R. 625, 632 (1987).

*Se dictará Sentencia confirmatoria de las convicciones apeladas.*

El Juez Asociado Señor Alonso Alonso concurrió con el resultado con opinión escrita. El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.

— O —

Opinión concurrente del Juez Asociado Señor Alonso Alonso.

No puedo suscribir la norma enunciada por este Tribunal sobre que "los tribunales de instancia *no* deben permitir que el perito opine, directamente, respecto a la veracidad de la versión del menor o sobre la confiabilidad de su testimonio" y otras expresiones hechas en la opinión del Tribunal que limitan el testimonio pericial. (Énfasis suprimido.) Opinión mayoritaria, pág. 806.

Nada hay en las Reglas 52 y 57 de Evidencia, 32 L.P.R.A. Ap. IV, que prohíba que el perito, en casos como el que nos ocupa, *opine* sobre la veracidad de la versión del menor o sobre la confiabilidad de su testimonio. Por el contrario, dichas reglas expresamente lo permiten en particular la Regla 57 de Evidencia, *supra*, la cual dispone que:

> No será objetable la *opinión o inferencia* de un perito por el hecho *de que se refiera a la cuestión que finalmente ha de ser decidida por el juzgador de los hechos.* (Énfasis suplido.)

Nótese que la Regla 57 de Evidencia, *supra, no sólo permite la opinión del perito* sino, también, *las inferencias* que éste haga, incluso sobre el *hecho* que finalmente ha de ser decidido por el juzgador de los hechos. Ello en nada afecta la función del juzgador de los hechos para *adjudicar la credibilidad.*

La opinión e inferencias del perito merecerán la credibilidad que el juzgador de los hechos le brinde.

Además, las Reglas 44 y 45 de Evidencia, 32 L.P.R.A. Ap. IV, permiten, expresamente, el testimonio en forma de opinón sobre el carácter veraz o mendaz de un testigo.

En casos como el de autos, y en aquéllos cuando los menores de edad sean víctimas de conducta desviada de adultos —en particular conducta sexual— y de maltrato de menores es imprescindible que permitamos que el juzgador de los hechos cuente *con el más amplio testimonio pericial* sobre los hechos en controversia.

En muchos de estos casos, el efecto en el menor a causa de esa conducta desviada le produce un trauma físico y sicológico que en ocasiones provoca que éste no pueda ni siquiera hablar sobre lo ocurrido.

Sólo mediante pruebas sicológicas, y la interpretación pericial de éstas, se pueden probar los hechos en controversia. Sobre el particular, véase la situación de hechos y el testimonio pericial de *Pueblo v. Ríos Maldonado*, 132 D.P.R. 146 (1992). En dicho caso, la menor (J.R.R.) no

tenía mucha capacidad para expresarse y fue precisamente con gestos y utilizando muñecos terapéuticos, y la opinión pericial, que se logró obtener su versión de los hechos.

Por lo anterior, concurro con el resultado.