# 2007 DTA 104

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE PONCE
PANEL III SUSTITUTO**

EL PUEBLO DE PUERTO RICO
Apelado

v.

MICHAEL LARACUENTE PAGÁN
Apelante

Núm. KLAN-2006-00530

San Juan, Puerto Rico, a 17 de agosto de 2007

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
la Juez García García y el Juez Cortés Trigo

Cortés Trigo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En el presente recurso de apelación se solicita la revisión de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, Hon. Roberto L. Angleró Ortiz (TPI), el 31 de marzo de 2006, notificada el 4 de abril de 2006. En la misma, dicho foro halló culpable al Sr. Michael Laracuente Pagán (Sr. Laracuente) de cometer el delito de maltrato tipificado en el Artículo 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como la Ley para la Prevención e Intervención con la Violencia Doméstica (Ley 54), 8 L. P.R.A. secs. 601 *et seq.*

Analizados cuidadosamente los alegatos de las partes, los Autos Originales, la transcripción de la prueba, y el derecho aplicable, resolvemos confirmar la sentencia apelada.

### I

El 24 de julio de 2005, el Sr. Laracuente fue acusado de cometer el delito de maltrato tipificado en el Artículo 3.1 de la Ley 54, por éste haber agredido a la Sra. Mayelline Fernández Rodríguez (Sra. Fernández). El juicio se celebró por tribunal de derecho el 9 de febrero de 2006.

La prueba de cargo consistió de los testimonios de la perjudicada Sra. Fernández y el Agente de la Policía de Puerto Rico Primitivo Matos (Agente Matos). Por la defensa declaró el Sr. Roberto Andrés Robles (Sr. Robles). Además, se admitieron en evidencia, por estipulación de las partes, ocho (8) fotografías de la Sra. Fernández, el récord de ésta en la Sala de Emergencias y el Informe de la Policía.

Del testimonio de la Sra. Fernández surge que ésta sostuvo una relación íntima de pareja con el Sr. Laracuente durante cuatro años y medio. Para la fecha de los hechos ya la relación entre ambos había concluido. Transcripción de la Prueba Oral (T.), pág. 9.

El 23 de julio de 2005, mientras iba en su auto con una amiga, la Sra. Fernández recibió una llamada del Sr. Laracuente en la cual éste le indicó que necesitaba hablar con ella. Ella le dijo que no, que no había nada que hubiesen hablado ya por teléfono, pero él le insistió y le dijo que necesitaba darle algo. Él le pidió que llegara hasta la Urbanización Stella de Guayanilla, donde vivía un amigo de ambos. Además, le indicó que él estaba allí con unos amigos y como ella estaba con su amiga, que no se preocupara, que era para darle algo y ella se podría ir rápido. (T., págs. 10-12).

La Sra. Fernández llegó a la urbanización y se estacionó hacia el frente de la casa del Sr. Robles, amigo del apelante. El Sr. Laracuente llegó, se estacionó, se bajó del auto y cruzó la carretera. Él se acercó al auto de ella. La Sra. Fernández tenía el cristal de su auto bajo y el apelante comenzó a golpearla en la cara con las dos manos. Ella se tiró para el lado de su amiga, quien la tapaba con las manos. El apelante logró sacar las llaves del auto de ella. (T., págs. 12-15).

La Sra. Fernández logró subir el cristal. El apelante salió corriendo para el lado del pasajero, abrió la puerta y le dijo a la amiga de ésta que se saliera del auto. El apelante agarró una botella de refresco (*"padrino"*) que la Sra. Fernández tenía y le dio con ésta en la cara por el lado derecho. Ella logró salir del auto y corrió hacia la parte de atrás del auto y tomó un palo que estaba tirado en el piso para asustar al apelante. Le pidió al apelante que parara, que no siguiera. El apelante le quitó el palo y le dio con éste cerca de la espalda y el muslo del lado

izquierdo. (T., págs. 16-17).

El apelante estaba bien enojado y le gritaba palabras obscenas. Le decía: *"Puta, no vales ná. Te voy a matar. No me importa si voy a la cárcel. No me importa que sea tu papá".* (T., pág. 18). Ella salió corriendo y el apelante la haló por un brazo y ella se cayó al piso. El apelante la arrastró un poco por el piso. Ella se peló por la parte de la espalda, cerca del lado derecho. La amiga de la Sra. Fernández gritaba y le pedía al apelante que parara. Pasó un señor en un auto blanco, se quedó mirándolos y cuando el apelante se percató se puso nervioso. (T., pág. 19).

Llegaron dos patrullas de la Policía. El apelante se sentó en las escaleras de una casa y ella le pidió que le diera las llaves para irse. El Agente Matos le preguntó a ella si le pasaba algo. Ella tenía el pelo largo y se tapó con su cabello largo, tomó las llaves y se fue del lugar. (T., págs. 19-21).

La Sra. Fernández recibió varias llamadas de su mamá, pero no las contestó. Luego su hermana la llamó y le pidió que fuera al cuartel porque sus padres estaban allí. La Sra. Fernández fue al Cuartel, donde el Agente Matos le tomó su declaración. Luego la enviaron al hospital en Yauco donde estuvo hasta las 7:30 a.m. (T., págs. 21-22). Declaró que ella estaba nerviosa en el momento de los hechos y no quería meter al apelante en problemas. (T., pág. 22).

Respecto a las lesiones que recibió, la Sra. Fernández indicó que las tenía al lado derecho de la cara, cerca del ojo, el cual estaba hinchado, negro y violeta y tenía unos chichones en la cabeza. Tenía moretones cerca de la ceja izquierda y en la parte de atrás de la oreja derecha. Además, tenía hinchado el dedo del corazón de la mano derecha y raspada la parte de atrás de la espalda. Le tomaron fotos en la Comandancia, pero había unas partes en el muslo que no se podían retratar. (T., págs. 22-23). La testigo identificó mediante las fotografías que se le mostraron las lesiones recibidas en distintas partes del cuerpo. (T., págs. 28-29).

La Sra. Fernández declaró que obtuvo una orden de protección en contra del apelante una semana después de los hechos, aunque no sabía si aún estaba vigente. (T., pág. 31). Indicó que, aunque nunca había reportado nada, ella y el apelante habían tenido discusiones fuertes. (T., pág. 32).

En el contrainterrogatorio, negó que hubiese seguido al apelante y gritado que su esposo lo iba a matar cuando regresara de Irak. (T., pág. 35). Aceptó que cuando la policía llegó al lugar de los hechos y le preguntaron si le sucedía algo, ella bajó la cabeza, cogió las llaves y se fue. Declaró que le preguntaron al apelante y éste dijo que no sucedía nada. Indicó que no hizo nada en ese momento por salvar al apelante. Aceptó que no informó nada, ni le enseñó nada por salvarlo a él, que bajó la cabeza para salvarlo a él. (T., pág. 37).

La Sra. Fernández testificó que si los policías vieron las condiciones en que se encontraba, no podían hacer nada porque ella se fue. (T., pág. 39). Negó que luego que abandonó el lugar se hubiera ido a visitar a Josué y que éste fuera su amante. (T., pág. 40). Aceptó que prestó una declaración jurada en la cual dijo que recibió maltrato físico y verbal del apelante y Josué. (T., pág. 44).

Además, indicó que del lugar de los hechos se trasladó a la Urbanización Santa María a casa de otra amiga para tranquilizarse. (T., pág. 50). Acudió al cuartel una hora y media después del suceso. No encontraba cómo llegar a la casa, cómo darles cara a sus padres, tenía que tranquilizarse primero. Aseveró que reportó que el apelante le dio. (T., págs. 52-53).

Finalmente, declaró que conoce al Sr. Robles, pero que no podía decir si al momento de los hechos si éste se encontraba dentro de su casa o no. (T., pág. 53). Negó que ella persiguiera al apelante. Indicó que no lo llamó, pero él la llamó a ella. (T., pág. 55). Indicó que hacía un tiempito que se había dejado del apelante. (T.,

pág. 56). Declaró que la decisión de presentar cargos contra el apelante la tomó ella aunque sus hermanas la aconsejaron que ya era hora de defenderse. (T., pág. 58).

La prueba de cargo concluyó con el testimonio del Agente Matos. Éste declaró que se encontraba dando una ronda con el Sargento García cuando el retén le informó por el radio que había una persona dándole con un palo a una dama y se trasladaron al lugar. El apelante estaba sentado en una escalera y la Sra. Fernández estaba sentada en el suelo. Él le preguntó a ella si se encontraba bien y ésta le dijo *"que me entregue las llaves"*. Él le preguntó si quería formular un cargo contra la persona y ella le contestó *"no, que me entregue las llaves del vehículo"*. El sargento García se dirigió al apelante, le pidió las llaves y se las entregó a la Sra. Fernández. El Agente Matos le preguntó a la prima de la Sra. Fernández que pasó, pero ella dijo que no sabía nada. Ambas se montaron en su vehículo y se marcharon. (T., págs. 63-64).

Posteriormente, como a las 10:00 ó 10:30 p.m., llegaron los familiares de la Sra. Fernández al Cuartel. Estaban preocupados porque se habían tratado de comunicar con ella y no contestaba el celular. Posteriormente, la Sra. Fernández llegó al Cuartel y presentó la denuncia contra el apelante. (T., págs. 64-65). En ese momento él la vio golpeada, tenía un hematoma en el lado derecho de la cara y en el izquierdo también. (T., pág. 65). Además, percibió que ella tenía un moretón detrás de la oreja y en el dedo otro moretón. (T., pág. 66).

La Sra. Fernández le dijo que había sido golpeada por el apelante esa noche, que no lo había dicho antes porque quería irse del lugar y no quería hacerle daño. El Agente Matos declaró que fueron a buscar al apelante, pero no lo encontraron porque se había ido para una actividad en Combate. (T., pág. 67).

Se le tomaron fotos a la Sra. Fernández en Servicios Técnicos y se fue para el hospital. El padre de ésta le dijo que habían salido en la madrugada. Al otro día, cuando comparecieron ante el Juez, a la Sra. Fernández se le notaban más los golpes en la espalda y el brazo. (T., págs. 69-70).

En el contrainterrogatorio, el Agente Matos contestó que se presentó en el lugar de los hechos porque le dijeron que estaban golpeando a una dama con un palo. Reiteró que al llegar al lugar, el apelante estaba sentado en una escalera y la víctima sentada en el piso. Aceptó que en la vista para determinación de causa bajo la Regla 6 de Procedimiento Criminal declaró que no vio nada en ese momento. (T., págs. 71-72).

Al ser confrontado con el Informe de la Policía, leyó que surgía del mismo que, luego que se consultó con el fiscal, se autorizó a someter el caso por amenaza, no por agresión. (T., pág. 74). No arrestó al apelante porque la perjudicada no tenía interés en ese momento. (T., pág. 76). Aceptó que se fueron del lugar porque la perjudicada no tenía interés en radicarle cargos al apelante o hacer una querella en contra de éste. (T., pág. 79). Reiteró que no se percibía nada al momento de los hechos. (T., pág. 80). Declaró que a la víctima se le vio agredida cuando llegó al Cuartel, pero no anteriormente. (T., pág. 81).

En el redirecto aseveró que le informó al Fiscal de turno que la víctima había sido golpeada y amenazada. Indicó que dijo que la víctima había sido golpeada por los golpes que ella presentaba y que vio cuando ésta llegó al Cuartel. (T., pág. 82).

Como única prueba de defensa se presentó el testimonio del Sr. Robles. Éste declaró que el día de los hechos había planificado salir con el apelante y el hermano de éste para Cabo Rojo. Estaba esperando al Sr. Laracuente cuando se percató de los biombos de la policía reflejados en la ventana y salió afuera a ver qué sucedía. Él se acercó y averiguó. Supuestamente unos vecinos mayores se habían quejado porque estaban hablando duro, que es una situación repetitiva, que había pasado antes. La policía les decía que tenían que despejar el área porque la señora se había quejado. Aseveró que el apelante y la Sra. Fernández estaban normales físicamente, todo estaba en orden. Cada cual se fue por su lado, ellos se fueron para Cabo Rojo. (T., págs. 85-87).

Al regreso vio la guagua de la perjudicada frente a la casa de Josué, el amante de ella. (T., pág. 88). Aseveró que la perjudicada tenía una relación de amistad con el apelante, que no hubo otro tipo de relación. Declaró que ella presentó acusación contra el apelante porque estaba obsesionada con él. (T., pág. 91). El apelante le dijo que el esposo de la perjudicada venía a matarlo o darle una pela. (T., pág. 92).

En el contrainterrogatorio negó que el día de los hechos el carro del apelante estuviese dentro de su casa. Aseveró que el auto estaba en la carretera. (T., pág. 93). Los agentes no lo entrevistaron. (T., pág. 96). Reiteró que el apelante le dijo el día después de que se fueron a Cabo Rojo que la perjudicada estaba obsesionada con él. (T., pág. 97).

El Ministerio Público y la defensa sometieron su caso con la prueba señalada y ofrecieron sus informes al juzgador. Luego de evaluar la prueba desfilada, el TPI halló culpable al apelante del delito de maltrato tipificado en el Artículo 3.1 de la Ley 54. El TPI suspendió todo procedimiento y le concedió al Sr. Laracuente los beneficios de libertad a prueba sujeto a que participara en un programa de readiestramiento para personas que incurren en conducta maltratante en la relación de pareja por el término de uno (1) a tres (3) años.

No conforme, el 28 de abril de 2006, el Sr. Laracuente presentó la apelación de epígrafe. Alegó que el TPI cometió los siguientes errores:

*"1. Erró el Tribunal de Instancia al determinar que existe más allá de duda razonable conexión entre el delito imputado y el acusado de delito cuando de la prueba surge que el mismo policía que tomó la querella en horas de la mañana fue el mismo que estuvo presente en la intervención donde alegadamente ocurrieron los hechos que dieron lugar a la presente querella y donde éste ni sus tres (3) compañeros agentes no observaron nada sospechoso, refiérase a la comisión de ningún delito ni en el acusado, ni en la presunta víctima como tampoco en el lugar donde alegadamente ocurrieron los hechos por lo que éstos no produjeron arresto ni medida de seguridad preventiva alguna tomando el agente en horas de la mañana la querella por información y creencia en relación al delito de amenaza.*

*2. Erró el Tribunal de Instancia al determinar que se probó más allá de duda razonable la existencia de una relación consensual entre el acusado y la alegada víctima cuando de la prueba testifical presentada por la defensa surge que nunca existió tal relación siendo éste un elemento esencial del delito de violencia doméstica.*

*3. Erró el Tribunal de Instancia en la apreciación de la prueba al no concordar ésta con la realidad fáctica."*

El recurso apelativo que nos ocupa quedó perfeccionado con la presentación de la transcripción de la prueba testifical y el alegato del Pueblo.

## II

En nuestro ordenamiento constitucional uno de los derechos fundamentales de los acusados es la presunción de inocencia. Sección 11 del Artículo II de Constitución del Estado Libre Asociado de Puerto Rico. Esta disposición constitucional *"exige que toda convicción siempre esté sostenida por prueba que establezca más allá de duda razonable todos los elementos del delito y la conexión del acusado con los mismos"*. *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 760-761 (1985). Por su parte, en la Regla 110 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 110, se incorporó esta norma. Allí se dispone que el acusado en un proceso criminal se presume inocente, mientras no se pruebe lo contrario, y de existir duda razonable sobre su culpabilidad, se le absolverá. Por tanto, el Ministerio Público está obligado a probar más allá de duda razonable la culpabilidad del acusado.

El estándar de prueba que se requiere para que se pueda sostener una convicción criminal es el que

establece una certeza moral capaz de convencer sobre la concurrencia de todos los elementos del delito y la conexión del imputado con éstos. *Pueblo v. Colón, Castillo,* 140 D.P.R. 564, 581-582 (1996). Esta prueba tiene que ser satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupaciones o en un ánimo no prevenido. *Pueblo v. Cabán Torres,* 117 D.P.R. 645, 652 (1986).

La insatisfacción del juzgador con la prueba es lo que se conoce como duda razonable y fundada. *Pueblo v. Rodríguez Román,* 128 D.P.R. 121, 131 (1991). Sin embargo, esto *"no significa que toda duda posible, especulativa o imaginaria tenga que ser destruida a los fines de establecer la culpabilidad del acusado con certeza matemática. Sólo se exige que la prueba establezca aquella certeza moral que convence, que dirige la inteligencia y satisface la razón".* *Pueblo v. Pagán, Ortiz,* 130 D.P.R. 470, 480 (1992). Además, la Regla 10(C) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(C), establece que *"para establecer un hecho no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza; sólo se exige la certeza o convicción moral en un ánimo no prevenido".*

Es doctrina reiterada que la apreciación y adjudicación de la prueba testifical corresponde, en primera instancia, al foro sentenciador y los tribunales apelativos intervendremos con ella sólo cuando se demuestre que instancia incurrió en error manifiesto, pasión, prejuicio o parcialidad. *Pueblo v. Roldán López,* 158 D.P.R. 54, 61 (2002). Esto responde a que el juzgador de hechos está en mejor posición para aquilatar la prueba presentada porque ha tenido el beneficio de ver directamente la manera que los testigos se expresaron y comportaron en la silla testifical. *Pueblo v. Rosario Reyes,* 138 D.P.R. 591, 598-599 (1995). Por lo tanto, las determinaciones que hace el juzgador de los hechos ante instancia no deben ser descartadas arbitrariamente ni tampoco sustituirse por el criterio del foro apelativo, salvo que de la prueba surja que el foro sentenciador no contó con base suficiente que establezca la culpabilidad del acusado más allá de duda razonable. *Pueblo v. Maisonave Rodríguez,* 129 D.P.R. 49, 63 (1991).

Un acusado no tiene derecho a un juicio perfecto, sino a uno justo y que satisfaga las exigencias del debido proceso de ley. Véase, *Pueblo v. Echevarría Rodríguez I,* 128 D.P.R. 299, 381 (1991). Los procedimientos judiciales son dirigidos por y dependen de los seres humanos, por lo que están sujetos a errores. Sin embargo, por mandato constitucional, el deber de todos es aspirar y velar porque estos procesos sean justos e imparciales. *Pueblo v. Santiago Lugo,* 134 D.P.R. 623, 631 (1993).

## III

El apelante, en los tres errores que apunta, esencialmente, impugna la apreciación y suficiencia de la prueba de cargo, por lo que los discutimos conjuntamente.

En el caso ante nos se le imputó al apelante el delito de maltrato tipificado en el Artículo 3.1 de la Ley 54, 8 L.P.R.A. sec. 627, el cual dispone, en lo pertinente, como sigue:

*"Toda persona que empleare fuerza o violencia psicológica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, para causarle daño físico a su persona, a los bienes de ésta, excepto aquéllos a que pertenecen privativamente al ofensor, o a la persona de otro o para causarle daño emocional, incurrirá en delito grave de cuarto grado en su mitad superior...".*

La acusación de este delito contra el Sr. Laracuente se hizo en la modalidad de empleo de fuerza física contra la persona con la que sostuvo una relación consensual, la Sra. Fernández. Para sostener la convicción por este delito, el Ministerio Fiscal tenía que presentar prueba suficiente sobre el empleo de fuerza física por el Sr. Laracuente en la persona de la perjudicada y que ello se hizo para causarle daño físico.

De la prueba presentada en el juicio se desprende claramente que el Ministerio Público probó todos los elementos del delito imputado y demostró la culpabilidad del apelante más allá de duda razonable. Específicamente, la víctima, Sra. Fernández, declaró de forma pormenorizada sobre la agresión que sufrió por el apelante, con quien había sostenido una relación consensual. Testificó como éste la agredió, primero con las manos en la cara, luego utilizó un galón de refresco para continuar agrediéndola en diferentes partes del cuerpo, la golpeó con un palo y la arrastró por el piso. De este testimonio surgen los elementos constitutivos del delito imputado y la conexión de éstos con el apelante. Esta declaración es suficiente para sostener por si sola la decisión apelada. Regla 10 (B) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10 (B).

Además, el testimonio del Agente Matos, las fotografías de la Sra. Fernández y el récord médico de ésta en la Sala de Emergencias admitidos como prueba confirmaron los elementos esenciales del testimonio de la víctima. Y al juzgador de los hechos le mereció crédito la versión de la Sra. Fernández sobre cómo sucedieron los hechos.

Contra lo anterior, el apelante sólo presentó unas contradicciones que entiende desacreditan la prueba del Ministerio Público. Hemos examinado detenidamente dicha alegación a la luz de la prueba desfilada y concluimos que las incongruencias en la prueba de cargo no se refieren a los elementos esenciales del delito ni a su conexión con el apelante, ni desvirtúan el valor probatorio que la prueba le mereció al juzgador de los hechos.

El apelante argumenta que no se configuró el delito porque los agentes que acudieron a investigar no vieron nada, ni arrestaron al apelante. No tiene razón. El hecho de que la policía, al acudir al lugar de los hechos, no arrestara al apelante porque alegadamente no había interés de la víctima, no desmiente el contundente testimonio de ésta en sala. En se momento la perjudicada le negó a la Policía que hubiese ocurrido algún incidente con el apelante, se tapó los golpes con el cabello e insistió en que el apelante le devolviese las llaves de su auto, por lo que los agentes entendieron que no había razón alguna para intervenir con el apelante. Además, el Agente Matos aclaró que, si bien no vio nada cuando acudió a investigar, más tarde ese día en el Cuartel vio las lesiones que mostraba la víctima, se le tomaron fotografías y ésta acudió al hospital. También describió los golpes que le vio a la perjudicada en el Cuartel. Con ello corroboró el testimonio de la víctima, el cual le mereció credibilidad al juez de instancia.

Por otro lado, el Sr. Robles, amigo personal del apelante, declaró que no vio discusión alguna entre el apelante y la víctima el día de los hechos; que éstos sólo hablaban alto y por eso una vecina se quejó. También atribuyó a la víctima tener una obsesión con el apelante, según le dijo el propio apelante luego de los hechos. Su testimonio, plagado de prejuicios en contra de la víctima y con el deliberado propósito de desacreditarla, debió evaluarse con reservas, dado los lazos de amistad con el apelante. Dicho testimonio no mereció credibilidad alguna al juzgador de los hechos. Resulta poco creíble que sólo se percatara de los biombos de las patrullas de la policía, no viera nada de lo ocurrido y achacara la presencia policíaca a los vecinos mayores de edad con manía y molestos por los ruidos.

En resumen, el análisis objetivo de la prueba testifical y documental que evaluó el juzgador de los hechos no demuestra que éste actuó motivado por pasión, prejuicio, parcialidad o cometiera error manifiesto en la apreciación de la prueba que tuvo ante su consideración. La prueba testifical y documental y, en particular, el testimonio de la víctima demostró, más allá de duda razonable, la comisión del delito imputado por el apelante.

## IV

De conformidad con lo antes indicado, se confirma la sentencia apelada.

Notifíquese.

Lo acordó y ordena el Tribunal y certifica la Secretaria del Tribunal.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones